The judgment of the court below is affirmed.

Affirmed.

# L. & N. R. R. Co. *v.* McMullen.

*Action to Recover Freight Charges.*

(Decided May 30, 1912. 59 South. 683.)

1. *Carriers; Rates; Overcharge or Undercharge; Mistake.*—Under the interstate commerce law providing for the publication of freight rates, a mistake of an agent of one engaged in interstate commerce in quoting rates, does not preclude the carrier from collecting the excess due in case of underpayment, nor preclude the shipper or consignee from collecting an overpayment.

2. *Same.*—The general rule that when a creditor accepts less than the amount due him by the debtor with full knowledge of the facts, he is thereafter precluded from collecting the excess, does not apply to carriers doing an interstate commerce business, and collecting a less amount than prescribed in the rates fixed by the interstate commerce commission.

[L. & N. R. R. Co. v. McMullen.]

3. *Same; Proof; Error Invited.*—Where the cause was so conducted by the defense as to indicate that, if evidence of the posting of the rate, as required by the interstate commerce law was necessary or pertinent, it was waived, the failure to show such posting would not prejudice the plaintiff's cause based on the right to recover for an under charge of freight rates established by the Interstate Commerce Commission; however, the establishment of such fact was not necessary to be shown.

4. *Bill of Exceptions; Instructions.*—The court will always construe the recitals of the bill of exceptions most strongly against the appellant, when a construction becomes necessary.

5. *Same; Presentation of Error.*—The recitals in the bill of exceptions considered, and it is held that the language, under a fair and just interpretation thereof, showed that appellant requested the court in writing to give the charge, and that the court refused to do so, and that its sufficiently appears to assign such refusal as error, notwithstanding the requirements of section 5364, Code 1907.

APPEAL from Butler Circuit Court.

Heard before Hon. A. E. GAMBLE.

. Action by the L. & N. R. R. Co. against John S. McMullen, to recover freight charges. Judgment for defendant and plaintiff appeals. Reversed and remanded.

S. L. FIELD, and R. B. SMYTHE, for appellant. The Interstate Commerce Commission, the Supreme Court of the United States, and the Supreme Court of Alabama, all agree that a shipper is liable, and must pay the lawful charges upon shipment, even though a lower rate may have been quoted him by an authorized agent of the carrier for such shipment, where it is interstate. —12 Int. Com. Rep. 418; *So. Ry. v. Harrison,* 24 South. 552; *Armour P. Co. v. U. S.,* 309 U. S. 56; *T. & P. R. R. Co. v. Abilene C. Co.,* 204 U. S. 426; *T. & P. Ry. Co. v. Cisco O. Mill,* 204 U. S. 449. On these authorities, it is insisted that the court erred in refusing the charges requested by plaintiff.

POWELL & HAMILTON, and LANE & LANE, for appellee. The matter of the charges is not presented for review, as under section 5364, Code 1907, the bill of exceptions must show that the charges were requested in writing,

and that the judge gave them or refused them, writing such word on the charge and signing his name thereto. —*Barnwald v. Murrell,* 108 Ala. 370; *Ala. Const. Co. v. Wagnon,* 137 Ala. 390. There is nothing in the evidence showing that the rates claimed were posted and promulgated as required by the Interstate Commerce Commission.

DE GRAFFENRIED, J.—1. The appellee, desiring to have 250 crates of oranges, weighing 80 pounds each, or in the aggregate 20,000 pounds, shipped to him from Orlando, Fla., to Greenville, Ala., applied to the general freight agent of the appellant for information as to the freight rates on said oranges from Orlando to Greenville. The general freight agent replied that the rate was 75 cents per hundred, or, in the aggregate, $150. Thereupon the appellee, relying upon the statement of said agent as to the freight rates, ordered the oranges. They were shipped to him, and the Seaboard Air Line Railroad Company, the initial carrier, delivered the oranges to appellant, the connecting carrier, at Montgomery, Ala., and appellant, in due course of business, transported the oranges to Greenville, Ala., and there delivered them to the appellee. When the oranges were delivered, the appellee paid to the appellant the above sum of $150 as the freight due on the oranges, and the same was accepted by the appellant as the full amount of such freight.

Two or three days after the oranges had been delivered to appellee and the freight paid, as above stated, it was discovered by appellant that, in quoting the freight rate to appellee, the general freight agent of appellant had made a mistake of $22.50 against the appellant, in that the sum of $150 was $22.50 *less* than the regular tariff rate as filed with the Interstate Commerce Commission from Orlando, Fla., to Greenville, Ala., by

the Seaboard Air Line Railroad Company and appellant, and as published by said Seaboard Air Line Railroad Company and appellant; and that when appellant delivered to appellee the oranges and accepted the $150 as the freight it had by mistake accepted $22.50 less than it should have collected under the regular tariff rate filed with said Interstate Commerce Commission. Thereupon the appellant called upon appellee, stated to him the above facts, demanded that he pay the said $22.50 to appellant, but the appellee denied liability for the same, and this suit was brought to recover said amount.

That the appellant's agent, in quoting the freight rate to appellee as $150 on the oranges, and that the appellant's agent, in accepting $150 as the freight, made an *honest* mistake, there is no doubt. There was, as is shown by all the evidence, no intention, in this transaction, on the part of appellant or of any of its agents, or of the appellee, to evade or in any way violate any of the provisions of the interstate commerce laws. The tariff rate as filed with the Interstate Commerce Commission by the Seaboard Air Line Railroad Company was, on oranges, 45 cents per box of 80 pounds each, from Orlando, Fla., to Montgomery, Ala., or a rate of 56¼ cents per hundred pounds between the two points, and of the appellant from Montgomery to Greenville of 30 cents per hundred pounds. In quoting the rate and in collecting the freight, the appellant, by mistake, computed the freight from Orlando to Montgomery at 45 cents per hundred, instead of at 56¼ cents, as it should have done, and this made, by a mistake in calculation, the rate of 75 cents per hundred, instead of 86¼ cents per hundred, from Orlando to Greenville, and for this reason appellant quoted and received $22.50 less than should have been quoted and received. That the mistake

occurred as above indicated is manifest as a necessary deduction. from the agreed statement of the facts.

In the case of *A. J. Poor v. Chicago, Burlington & Quincy R. R. Co. et al.*, 12 Interst. Com. R. 418, the Interstate Commerce Commission, through Harlan, commissioner, said: "Stability and' equality of rates are more important to commercial interests than reduced rates. It was instability and inequality that were the special evils to be remedied; it was the possibility that *one* shipper, in *one* way or *another*, whether by *mistake* or otherwise, could, and actually did, get a lower rate than another shipper that led to more stringent legislation. * * * In this respect the published rate has become a protection to shippers and to carriers alike. Regardless of the rate quoted or inserted in a bill of lading, the *published* rate *must* be paid by the shipper and *actually* collected by the carrier. * * * While shippers rely largely upon the rates quoted by freight agents and billing clerks, the *law* charges them with knowledge of the *lawful* rates. And they will not be heard before this Commission to claim the benefit of a lower than the lawful rate, on the ground that some railroad clerk has made a mistake in quoting a lower rate for a particular shipment. To permit shippers to impute negligence to carriers in quoting rates, instead of paying the lawfully published rate, would open a *broad* and *ample way* for the *payment of rebates* and for other *unlawful practices*, and might, in its practical results, work a repeal of the essential features of this legislation."—*Poor v. C., B. & Q. R. . Co. et. al.*, 12 Interst. Com. R. 418.

In the case of *Southern Ry. Co. v. Harrison*, 119 Ala.. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936, the Supreme Court, through Brickell, C. J., said that a contract for the transportation of an interstate shipment at less than the published rate approved. by the

Interstate Commerce Commission is invalid, and the carrier may collect the rate as published, regardless of the rate fixed by the bill of lading.

In the case of *Armour Packing Co. v. United States,* 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681, the Supreme Court of the United States declared that the tariff rate, when fixed and approved by the Interstate Commerce Commisison and published as required by law, is read into the contract of affreightment, and becomes a part thereof.—*Armour Packing Co. v. U. S.,* 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681.

It is evident from the opinions of the Interstate Commission in the above case of *Poor v. C., B. & Q. R. R. Co.,* and of the United States Supreme Court in the above case of *Armour Packing Co. v. U. S.,* that it is the established purpose of the federal government to require common carriers to collect, and shippers or consignees to pay, on all shipments covered by the interstate law the exact amount covering such shipments as is fixed by the schedule of rates filed with and approved by the Interstate Commerce Commission and published as required by law; and that the federal courts will permit no defense to an action instituted by a common carrier engaged in interstate commerce to recover of a shipper or consignee the exact amount of its lawful freight charges, provided such defense presents a possible method by which the terms of the interstate commerce law may be evaded.

It is apparent that if, by reason of the alleged negligence or mistake of an agent of a carrier in furnishing to a shipper a lower rate for an interstate shipment than the rate filed and approved by the Interstate Commerce Commission, the shipper is permitted to pay, and actually pays, such lower and unauthorized rate, and the courts, in an action by such carrier against such

shipper for the difference in the amount which is should have received under the lawful rate and the amount it actually received, refuse to allow the carrier to recover such amount, because of the voluntary acceptance by such agent of the illegal amount, a wide door would be thrown open for an evasion of a law which was called into existence for the protection of shippers from unjust and ruinous discriminations at the hands of carriers engaged in interstate commerce. Under the law, appellee admits that the appellant, when it delivered the freight, was clothed with the authority to demand of the appellee $172.50, instead of $150, and to hold the freight, by virtue of its lien, until the $172.50 was paid, in spite of the mistake of its general freight agent in quoting to appellee the rate of $150.—*Southern Ry. Co. v. Harrison, supra.* Under the terms of the interstate commerce law, however, as its terms have been construed by the federal courts—a construction placed upon that law for the purpose of preserving it in its efficiency and rendering it a potent factor in protecting shippers from unjust discriminations at the hands of those engaged in interstate commerce—a carrier may recover the legal rate due it on an interstate shipment, although an agent may make a mistake as to the amount due under the legal rate and, through such mistake, deliver the freight to the consignee upon the payment of a less sum than the legal rate.—*Poor v. C. B. & Q. R. R. Co., supra.*

Of course, the rule that where one, with full knowledge of all the facts, accepts in payment of a debt a less amount than the sum actually due him he will not be permitted afterwards to claim the balance not paid is familiar. The rule that money voluntarily paid, with full knowledge of all the facts, cannot be recovered back is also familiar, as is that other rule that when an illegal contract is executed, and the parties are in pari

delicto, the law will not interfere between them. It is, however, evident that it is the purpose of the federal courts, into whose keeping the interstate commerce law is peculiarly committed, because it is a federal law and covers matters resting peculiarly within the police powers of the federal government, to refuse to permit the oversights, the blunders, or mistakes of the clerks or agents of those engaged in interstate commerce, upon the above ground, to. preclude the carrier from collecting, in case of *underpayment,* the actual amount due on an interstate shipment, or the shipper or consignee, in case of *overpayment,* from the collection of the amount overpaid.

2. In the present case, as a mathematical calculation will demonstrate, the freight rate quoted and the amount collected, viz., $150, was due to a mistake of appellant's agent or agents in calculating, from the published schedules, the amount of the freight. As we have already said, the manner in which the mistake occurred is apparent. The agent simply computed the freight on the 250 boxes, aggregating 20,000 pounds at 30 cents per hundred from Montgomery to Greenville, and at 45 cents per hundred from Orlando to Montgomery, overlooking the fact that the rate of 45 cents from Orlando to Montgomery was the rate on oranges in boxes of 80 pounds, instead of in boxes of 100 pounds. While the general rule of law is, as above stated, that when, with full knowledge of the facts, a creditor accepts from his debtor *less* than the amount due him, he will not afterwards be heard to complain, *full knowledge* of the facts is one thing, but *merely having the means* of ascertaining the real facts is an entirely different thing. Having the *means* of ascertaining the real facts is *not tantamount* to actual knowledge of them. In the present case the appellant's agent, acting prob-

ably upon the statement in the bill of lading that the rate was 75 cents per hundred from Orlando to Greenville, had, in the published rates, the means of ascertaining what was the true rate. It is not claimed that he actually *knew* of this error until after the appellee had paid the freight and had received the oranges. All the parties to this transaction acted in good faith; and, the above being an irresistible inference from the testimony, the appellant's agent, while possessing the means of ascertaining all the facts, did not in fact *know* the actual freight rate when he accepted the appellee's money and delivered the freight, and upon this *consideration* alone the appellant was entitled to recover.

3. There is nothing in the contention of appellee that the appellant failed to make out its case, because it failed to show that it had "posted" its rates as required by the interstate commerce law. In the first place, this case, as shown by the remark of the trial judge to appellant's attorney when the letter from De Funiak was admitted in evidence, was so tried in the court below as to indicate that, if such evidence was deemed necessary or pertinent, it was waived by appellee; and, in the second place, such evidence was not necessary.—*Texas, etc., R. Co. v. Cisco Oil Mill,* 204 U. S. 450, 27 Sup. Ct. 358, 51 L. Ed. 562.

4. The bill of exceptions recites that at the conclusion of the evidence plaintiff requested the court to give in writing the following charges:

"The court charges the jury, if they believe the evidence, they must find for the plaintiff'; and the court thereupon indorsed upon said charge the word 'refused.'

"Counsel for defendant then asked the court to give the following charge in writing, to-wit: 'The court charges the jury that, if they believe the evidence, they will find for the defendant.' The court thereupon indorsed upon said charge the word 'given'."

We think that, giving the above language a fair and reasonable interpretation—such an interpretation as we should give it construing the bill of exceptions most strongly against appellant—the bill shows that the appellant requested the court, in writing, to give to the jury the affirmative charge in its behalf, and that the court refused to do so. It is true that section 5364 of the Code requires the court to write "given" or "refused" on written charges, and to sign his name thereto. The bill of exceptions does not show that the judge signed his name to the word "refused" on the above written charge; but we think that it does show affirmatively that the court considered the charge and refused to give the charge to the jury and his refusal to give the charge is here assigned as error.

The propositions announced in *Barnewell v. Murrell,* 108 Ala. 370, 18 South. 831, and *Ala. Construction Co. v. Wagnon Bros.,* 137 Ala. 390, 34 South. 352, are in perfect accord with the views above expressed.

Under the undisputed facts in this case, the appellant was entitled to the general affirmative charge in its behalf.

Reversed and remanded.