# Adams *v.* Central of Georgia Ry. Co.

### Injury to Passenger.

(Decided December 21, 1916.    73 South. 650.)

1. **Evidence; Documentary; Certificate; Authority of Officer.**—Under § 3983, Code 1907, the secretary of the Railroad Commission, if he was the appropriate custodian of the records of the Commission, was authorized to make the proper certificate.

2. **Same.**—In the absence of a valid authorization an official custodian cannot certify to anything not copied from the documents or records in his custody, and cannot deduce from the documents or records his conclusion of facts and by his certification thereto give them any sanction or force as evidence.

3. **Same.**—The fact that a certificate by an official custodian, authorized to certify, contains extra official inadmissible assertions of facts or conclusions, will not deprive the certificate of its appropriate effect in so far as the official is authorized to certify.

4. **Same.**—Under §§ 5521 et seq., Code 1907 a certificate of the secretary of the Railroad Commission that a passenger's tariff of a certain railroad filed with the Railroad Commission shows the passenger fare between certain points was $0.15 and that the fare of $0.15 was the effective fare be-

[Adams v. Central of Georgia Ry. Co.]

tween those points during a certain month, no date of filing of the tariff being shown, was not admissible in evidence.

5. **Same; Schedule of Rate; Certificate.**—Where the action was for the ejection of a passenger for a refusal to pay the fare demanded and there was not an efficiently certified copy of the rates of the railroad filed with the Railroad Commission there was no evidence of a duly filed and published schedule in force at the time plaintiff was ejected, notwithstanding the schedule was admitted in evidence without objection to the schedule as distinguished from the certificate and the conductor testified that it was the schedule sent him by the company.

6. **Carriers; Passengers; Ejection; Action.**—Where the fare demanded by a carrier was the fare fixed and filed by the carrier with the Railroad Commission for the service in accordance with §§ 5521, 5525, 5667 and 5527, 5531, Code 1907, as amended by Acts 1909, p. 210, and the schedule had not been changed by the Railroad Commission a passenger cannot maintain an action at common law against a carrier on the ground that the rates fixed and published are excessive and unreasonable; his remedy being to correct the exaction of excessive rates through the Railroad Commission.

7. **Same.**—Where it did not affirmatively appear that the fare demanded from the ejected passenger was that fixed by the schedule of rates duly published and in force at the time plaintiff was ejected, it was error to direct the verdict for defendant.

Mayfield and Sayre, JJ., dissent.

APPEAL from Shelby Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Action by F. M. Adams against the Central of Georgia Railway Company for damages for ejecting him while a passenger. Judgment for defendant and plaintiff appeals. Reversed and remanded.

RIDDLE & ELLIS and RIDDLE & BURT, for appellant. LONDON, YANCEY & BROWER, for appellee.

MCCLELLAN, J.—The report of the previous appeal of this cause appears in 189 Ala. 665, 66 South. 628. The action is for damages for the alleged wrongful ejection of the plaintiff, a passenger, after he had seasonably tendered to the conductor 13 cents as and for the maximum of the lawfully demandable passenger fare between Dunnavant and Sterretts, two stations on the appellee's line in this state. The conductor demanded 15 cents as fare between those points. The plaintiff refused to pay more than 13 cents, the sum he tendered, and was ejected.

The bill of exceptions recites: "The defendant offers in evidence the Central of Georgia Railway Local Passenger Tariff No. 57, between all stations from Birmingham, Ala., to.

Columbus, Ga., inclusive, together with certificate thereto in words and figures as follows:

"The passenger tariff introduced was Central of Georgia Local Passenger Tariff No. 57, I. C. C. No. 663, which gives the passenger fare between the various stations on said railroad between Columbus, Ga., and Birmingham, Ala., and shows the fare from Dunnavant to Sterrett and from Sterrett to Dunnavant, to be 15 cents, and the distance to be 5.1 miles, which said tariff was accompanied by the following certificate, viz.:

" 'Railroad Commission of the State of Alabama.

" 'Montgomery, Ala., Jan. 23, 1913.

" 'I hereby certify that the Central of Georgia Railway Company's Local Passenger Tariff No. 1, 1909, filed with the Railroad Commission of Alabama, shows the passenger fare from Dunnavant, Alabama, to Sterretts', Alabama, to be fifteen (.15) cents. And I further certify that the said passenger fare of fifteen (.15) cents was the effective fare between said points during the month of February, 1911, except where cash fares were paid to the conductor.

" 'And I further certify that Supplement No. 2 to Central of Georgia Railway Company's Local Passenger Tariff No. 57, I. C. C. No. 633, filed, with the Railroad Commission of Alabama, shows conductor's fare from Dunnavant, Alabama, to Sterretts', Alabama, during the month of February, 1911, to be thirty (.30) cents.

" '[Signed] S. P. Kennedy, Secretary.' "

(1) The plaintiff objected "to said certificate" on the following grounds, viz.: That it was irrelevant; illegal; immaterial. The plaintiff also objected to this statement in the certificate: "And I further certify that the said passenger fare of fifteen (.15) cents was the effective fare between said points during the month of February, 1911"—on the same grounds above noted as directed to the certificate as a whole, and also on these additional grounds: (4) The same is a conclusion; (5) it is undertaking to certify to what the law is in reference to the rate between said points. No question is made against the authority or the competency of the secretary to make a proper certificate. If he was the appropriate custodian of the records of that department he was authorized to make a certificate.—Code, § 3983. This statute only contemplates the certification of transcripts of official documents or records in official custody.

[Adams v. Central of Georgia Ry. Co.]

(2) In the absence of valid authorization, an ·official custodian is not competent to certify to anything not copied from the documents or records in his custody. Such a custodian cannot deduce from documents or records his conclusions of fact and give thereto by his certification any sanction or force as evidence. The general rule is that if facts, outside of the reproduced official record or document, are necessary to be proven, the ordinary methods to establish facts in the courts must be observed.— *Peebles v. Tomlinson,* 33 Ala. 336; *Bonner v. Phillips,* 77 Ala. 427; Jones on Ev. § 543; 2 Ency. of Ev. pp. 964-967. There are exceptions, not here important, to that rule; some of them being, of course, the result of positive law affecting the subject.—See Jones on Ev. § 544; 2 Ency. of Ev., pp. 963, 964; *Walling v. Morgan Co.,* 126 Ala. 326, 28 South. 433.

(3) If a certificate by an official custodian authorized to certify contains extraofficial, inadmissible assertions of fact or conclusion, that circumstance will not deprive the certificate of its appropriate effect in so far as the official was authorized to certify.—*Johnson v. Hocker,* 1 Dall. (Pa.) 406, 1 L. Ed. 197; *Petrucio v. Gross* (Tex. Civ. App.) 47 S. W. 43.

(4) The entire certificate of the secretary of the Railroad Commission of Alabama was, in our opinion, inadmissible. The filing of schedules of rates, by common carriers, with the Railroad Commission of Alabama under the statutes of forcè in 1911 (Code, §§ 5521, et seq.), presupposes, at least prima facie, that that department will note on the schedule or in its records the fact and date of filing a schedule. Presumptively, either the rec· ords of the department or the schedule itself will disclose the fact and date of a filing of the schedule. If so, the properly certified copy will serve to show both the fact and date of the filing. Hence the statement in the secretary's certificate that a certain schedule of rates was filed (no date is attempted to be given therein) was but a recital of his conclusion, it may be supposed, the document or records in his custody. It was not a subject to which he was authorized to certify. The other features of the certificate, including that to which separate objection was taken, were clearly without the secretary's power or authority to authenticate. They were only deductions from some source; a conclusion only the court was empowered to consider and attain from sources of which a court may properly take cognizance. The certificate should have been excluded on the general grounds stated by the objection.—*Sanders v. Davis,* 153 Ala. 375, 44 South. 979.

[Adams v. Central of Georgia Ry. Co.]

(5) Without an efficiently certified copy of the schedule referred to in the bill of exceptions—even though the schedule was admitted in evidence without objection to it as distinguished from the certificate, and even though the conductor testified that it was the schedule sent him by the company and by which the fares were charged and collected—there was in the case no evidence that this was the duly filed and published schedule in force. at the time plaintiff was ejected.—Code, §§ 5521, et seq.

(6) If the schedule described in the bill of exceptions was the duly filed and published schedule then in force, fixing 15 cents as the passenger fare between Dunnavant and Sterretts, the sound doctrine of *Texas & Pacific Ry. Co. v. Abilene Oil Co.*, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, is due to be applied to the case in hand; the considerations governing the conclusion there being present here. Where a rate of carriage exacted or charged is that which has been duly fixed, and filed by the carrier for the service in accordance with the statutes (Code, §§ 5521, 5525, 5667, and sections 5527, 5531, as amended [Acts 1909, p. 210]), and it has not been changed by the state department vested with power thereto, a passenger cannot maintain an action at common law against the carrier on the ground that the rates so fixed and published are excessive and unreasonable (*Texas & Pacific Ry. Co. v. Abilene Oil Co.*, *supra*). In order to maintain the uniformity in rates contemplated by the statutory system, the remedy is through the Commission to correct the exaction of excessive and unreasonable rates under duly filed and published schedules; not by an action at law for damages consequential from the exaction of the rates specified in a legally existing schedule. It necessarily results from the applicable doctrine announced by the Supreme Court in the decision cited that a plaintiff in an action at law for damages cannot invoke inquiry into the correctness or the existence of the basis or bases of rates specified in the duly filed and published schedule of rates; distance between stations being an essential basis for the ascertainment and promulgation of a passenger fare, between certain points, when, as is the case, the rate per mile or part of a mile is established. If a mistake in distance is innocently made, or if by fraudulent design the incorrect distance is expressly recited in a duly filed, published and effective schedule of rates or is made the basis for the calculation to ascertain the fare between two points at a given lawful rate per mile.

or part of a mile, the inquiry can only be instituted before and made by the commission.

(7) Since the evidence before the trial court fell short of affirmatively showing that the schedule of rates referred to in the quoted part of the bill of exceptions was the duly filed, published, and effective schedule of rates of passenger fares in force at the time this plaintiff was ejected because he tendered a less sum for the service he desired than that specified in the schedule, the court was in error in giving the general affirmative charge for the defendant.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur in the entire opinion. SAYRE, J., concurs in the opinion except with respect to the ruling on the question of evidence considered and decided.

MAYFIELD, J.—(dissenting.)—I cannot concur in the reversal of this judgment. I concur in what is written, as to the rulings on the evidence; but with this evidence excluded, and on the plaintiff's own evidence, he showed no right to recover in this action, and none to recover more than 2 cents in any other action.

This record convinces me that the plaintiff entered the train, on the occasion complained of, not for the purpose of being carried, but for the purpose of being ejected, and then bringing this suit to recover damages.

Courts should not listen to the complaints of litigants who voluntarily sustain their own injuries. It indisputably appears that by paying 2 cents more than the amount tendered, he would have been carried to his alleged destination. He had no contract to be carried to his alleged destination for 13 cents. The conductor had no authority to carry him, or allow him to be carried, for 13 cents, the amount tendered. The fact (if it be a fact) that other passengers had been carried this distance—the distance between these two stations—for 13 cents, or even for nothing, neither gave the plaintiff the right to be so carried, nor authorized, or enjoined the duty upon the conductor to carry plaintiff, or allow him to be carried for that amount. The conductor had been furnished a schedule of rates and distances be-

tween the various stations on the defendant's line of railroads. This was his sole criterion of the fare to be collected by him from passengers not provided with tickets or transportation. Whether these rates and distances were established or limited by statute or by other authority, they were the rules of the company, and were not shown to be unreasonable or unlawful. In fact, the rate per mile, $2\frac{1}{2}$ cents, was the rate fixed or named in the statute; but no statute had attempted to say what the distance was between these two stations, and none probably ever will. Plaintiff could not legally dispute or contest with the conductor the distance between these two stations, or any other stations. It is perfetcly certain that a conductor cannot know the exact distances between all stations on the railroad line over which his train is being operated; nor can passengers have such knowledge without actually measuring the distances, and everybody knows that neither passenger nor conductor measures such distances in order to ascertain the amount of the fare between two places. If the plaintiff had measured the distance between the two stations in question, or had had it done, it was merely for the purposes of this suit, and not for the purpose of determining the amount of fare he ought to pay. The sole difference between the plaintiff and the conductor was, that the schedule furnished the latter showed the distance to be 5.1 miles, while the contention of the plaintiff was that it was exactly 5 miles or less—not a fraction more.

I ask in all seriousness, if it is the law of this state now, or if it ever was the law, that a passenger who boards a train without a ticket or contract of carriage may dispute or contest the distance between two stations, and decline to pay for the distance shown by the carrier's schedule, the only criterion possessed by the conductor for his guidance, and—the conductor declining to carry him without his paying for the distance so shown—thereafter, in a suit, recover damages if it be ascertained by the jury that the distance was overstated in the schedule and that the passenger had tendered the proper fare for the actual distance. I do not believe that this is now, or ever was, the law of this state or of any other state or country.

If the schedule employed by the conductor in this case was not the one approved by statute or law, it was at least the reasonable rule and regulation of a common carrier, and controlled, unless in violation of the statute. And the burden was on the

[Adams v. Central of Georgia Ry. Co.]

plaintiff, and not on the defendant, to show that it was in violation of the statute, or that it was unreasonable.

The case of *Manning v. Louisville & Nashville Railroad Co.*, 95 Ala. 392, 11 South. 8, 16 L. R. A. 55, 36 Am. St. Rep. 225, was a much stronger case for the plaintiff than is this, and it was held that he could not recover. The headnote of that case is as follows: "A regulation adopted by a railroad company requiring a passenger who is found traveling without a ticket, or on a ticket which has been forfeited, to pay for the part of the route already passed over, as well as the part yet to be traveled, is a reasonable rule; and on his failure or refusal to comply with it, the passenger may be ejected."

In a New York case there was an express statute applying to the case then in hand. That decision is well stated in the headnote to the report of the case in 62 L. R. A. 357, as follows:

"One who boards a train without a ticket because the ticket office is not open for the sale of tickets as required by statute cannot refuse to pay the extra train fare required of passengers without tickets, and resist ejection on tender of the price of the ticket, but must pay the additional fare and resort to his legal remedy to recover it and the statutory penalty for failure to have the office open."—*Monnier v. N. Y. C. & H. R. R. Co.*, 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619.

If there was any discrimination against plaintiff in the case at bar, section 5531 of our Code gives him his remedy; his only remedy.

While I find no case with facts exactly like this, I do find many other cases in which the facts were much stronger for the plaintiff and against the defendant than they were in this; and in all of them, the right of recovery was denied as a matter of law. Cases in which tickets had expired, or were issued wrongfully, without fault of the passenger, certainly present stronger cases than where no contract at all is made or attempted to be made, and no more fare is attempted to be collected of the passenger than if he had bought a ticket. It is conceded here, or shown without dispute, that if a ticket had been issued to plaintiff he would have had to pay 15 cents for it. It was shown without dispute that tickets were issued to passengers traveling between the two stations in question, and that the uniform and only price thereof was 15 cents, and plaintiff admitted that he had paid that price for tickets. No ticket was issued or could be issued on

the occasion in question, because there was no ticket office at the station at which he boarded the train, but there was a ticket office at the other station; and on plaintiff's return, if he came back on defendant's road, he would have to purchase a ticket and to pay 15 cents for it. No one has ever heard of ticket rates being higher than conductor's rates—in fact, the court and everybody else knows that conductor's rates are the higher, where the passenger takes train at a station at which he could have procured a ticket, but failed to do so, on account of his own fault. Here the plaintiff's whole contention is that the conductor's rates are, or ought to be, 2 cents less than the ticket rates. Surely the rate—that fixed by law or by the reasonable rules of the carrier—is not made to depend upon the direction in which the passenger or the car is going; yet this is the contention of plaintiff. It is not disputed that no more fare was demanded of plaintiff than the ticket rate, or that fixed by the passenger tariff rates, schedules, and time cards, of the carrier. Suppose the rates were not approved by the carrier, or had not been filed. The rate per mile was exactly that fixed by the statute and the rules and regulations of the carrier as to the carriage of all passengers between the two stations in question, and there is nothing to show that the rules and regulations were unreasonable. The reasonable rules and regulations of carriers are as binding upon the public and passengers as if they had received legislative sanction. When the conductor is enforcing a reasonable rule or regulation against a passenger, the law does not allow the passenger to contend with the former about it, nor to resist the rule's enforcement. The law is made for the good of the public as well as for that of the individual passenger or particular carrier. The law on this subject, and the reason for it, was probably never better stated than by Judge Cooley when he was Chief Justice of the Supreme Court of Michigan. In the case in question a passenger had actually paid his fare, but the conductor had no evidence of it (under the rules of the carrier, by which he had to be guided for the benefit of the public as well as of the carrier); and Judge Cooley said: "If, when a passenger makes an assertion that he has paid fare through, he can produce no evidence of it, the conductor must at his peril concede what the passenger claims, or take all the responsibilities of a trespasser if he refuses, it is easy to see that his position is one in which any lawless person, with sufficient impudence and recklessness, may have

him at disadvantage, and where he can never be certain, if he performs his apparent duty to his employer, that he may not be subjected to severe pecuniary responsibility. Such a state of things is not desirable, either for the railroad companies or for the public. The public is interested in having the rules whereby conductors are to govern their action certain and definite so that they may be enforced without confusion and without stoppage of trains; and if the enforcement causes temporary inconvenience to a passenger, who by accident or mistake is without the proper evidence of his right to a passage, though he has paid for it, it is better that he submit to the temporary inconvenience, than that the business of the road be interrupted to the general annoyance of all who are upon the train. The conductor's duty, when the passenger is without the evidence of having paid his fare, is plain and imperative, and it can serve no good purpose and settle no rights to have a controversy with him. The passenger gains nothing by being put off the car, and loses nothing by paying what is demanded and staying on."—*Hufford v. Grand Rapids & I. Ry. Co.*, 53 Mich. 120, 18 N. W. 580.

In a New Jersey case decided by Chief Justice Beasley (*Petrie v. Pennsylvania R. R. Co.*, 42 N. J. Law [13 Vrom] 449), the facts were that: "The plaintiff was riding in the cars, by virtue of a ticket that did not give him the right to a discontinuous passage. Having stopped at an intermediate point, and having entered another train, he claimed the right to continue his journey on such ticket, under permission given by a conductor of the first train. Refusing to pay his fare, he was put off, it appearing that only train agents had the power to modify the force of such tickets. *Held,* such expulsion was justifiable, although, at the trial, the plaintiff testified that it was, in point of fact, a train agent, and not a conductor, that had given him the privilege claimed."

If the passenger in these cases was not allowed to contend with the conductor, when he was able to prove his contention, surely plaintiff in the case at bar ought not to have been allowed to contend with the conductor as to the distance between these two stations, when, as conclusively shown by the record, neither conductor nor passenger at that time knew the distance or could then determine the dispute except by stopping the train and delaying all passengers and the train until the distance could be measured. Such a course would have been unreasonable; un-

[Adams v. Central of Georgia Ry. Co.]

heard of.   The law therefore will not allow the public to thus suffer hindrance and inconvenience incident to disputes between passenger and conductor in such matters, and says that the passenger must conform to the rule or leave the train.   That is to say, this is one of the rules of transportation companies, and unless they are unreasonable the rules are the law of such cases.

The sole dispute in this case, and the ground upon which plaintiff rests his right to recover, is the distance between two given stations; he maintains that the distance is less than 5 miles, while defendant's schedules, tariffs, time-tables, etc., show the distance to be 5.1 miles.   It is conceded that if the distance is 5.1 miles, no more fare was demanded than the law (aside from the rules of the carrier) allows; in fact, the amount demanded was exactly what the statutes fix.   It is also conceded that at the time the fare was demanded neither the conductor nor the plaintiff knew what the exact distance was—whether more or less than 5 miles.   All that either had as a guide was the schedule, tariff rates, and time cards, issued by the carrier, and the rules of the carrier to which the conductor and the public are required to conform.   Here the rules were not only reasonable, and therefore valid, but were the law as fixed by the statutes, except as to distances.   The only possible mistake or wrong ever committed by the defendant was in the measuring of the distance between these two stations.   If it be conceded that this was a mistake, it was one not to be corrected by damage suit (when a damage suit could be avoided by paying two cents).

Must the distances be established between all stations on railway lines by the verdicts of petit juries in damage suit cases brought by passengers who refuse to conform to the rules or tariffs of the carrier?   I say no; that the law does not require—will not allow—the question to be so settled.

The leading case on the subject of the right of a conductor to eject a passenger who refuses to show a ticket or to pay the fare fixed by the reasonable rules is that of *Townsend v. N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 295, 15 Am. Rep. 419, wherein, among other things, it is said: ·

"In *Hibbard v. New York & Erie Railroad Co.*, 15 N. Y. 455, it was held by this court that a railroad company had the right to establish reasonable regulations for the government of passengers upon its trains, and forcibly eject therefrom those who

refused to comply with such regulations. Surely, a regulation requiring passengers either to present evidence to the conductor of a right to a seat, when reasonably required so to do, or to pay fare, is reasonable; and for noncompliance therewith such passenger may be excluded from the car."

Here the plaintiff had no contract which he insisted upon enforcing; at best he only had a possible right, and he himself says that at the time he was ejected he did not know positively whether he had the right for which he was contending, because at that time he did not know the distance between the two stations. He therefore brought this action seeking to recover $5,000 as damages, against the defendant, in order to test the question whether or not the defendant had the right to make him pay two cents. Courts were not instituted for such purposes; the law does not sanction such actions, and will never allow such recoveries. Common carriers, such as railroad companies, are public servants, and their business, under certain limitations, can and should be controlled and regulated by statute, and they can and should be required to conform to such valid statutes and regulations, and to answer in damages to those of the public who suffer damages in consequence of their failures to so conform; but the statutes imposing the regulations have also provided the mode and means of compelling them so to conform, or to respond in damages therefor, and, in cases like this, have fixed penalties as for such failures. It is perfectly clear and certain that the law never intended that the distances between the stations on carriers' lines should be determined or fixed by the verdict of petit juries in damage suit cases. The only disputed question of fact or of law that this case can settle is whether the distance between two stations on defendant's line is more or less than five miles. One jury may decide it to be more, and another less; and 1,000 verdicts in similar cases would never settle the question.

There are two venerable and well-settled maxims of the common law of this and all other states, applicable to this case, on the undisputed facts as shown by this record; and the application of either will prevent any possible recovery of damages. The first is, "Volenti non fit injuria." The second is, "De minimis non curat lex." This record, I submit, shows on its face that plaintiff voluntarily suffered all the injuries, and that he suffered them for the purpose of bringing this suit.

[Birmingham Railway, L. & P. Co. v. Garrett.]

If the plaintiff was entitled to recover anything it was, under his own evidence, an amount less than the jurisdictional amount of the circuit court ($50). It is perfectly certain that bringing the action originally in the circuit court was a fraud on the law and the jurisdiction of the court.—*Exch. Nat. Bank v. Clement*, 109 Ala. 277, 19 South. 814; *Grier v. Campbell*, 21 Ala. 327; *Cowan v. Jones*, 27 Ala. 317.