McCLELLAN and MILLER, JJ., concur in conclusion only.

SAYRE, J., dissents.

---

(92 South. 797)

T. R. MILLER MILL CO. v. LOUISVILLE & N. R. CO. (6 Div. 418.)

(Supreme Court of Alabama. Nov. 10, 1921. Rehearing Denied March 3, 1922.)

1. Trial ⬥253(8)—Instruction as to understanding of public and lumber trades as to terms, "lumber" and "timber" as determining rates, too narrow as ignoring construction of terms by carrier and shippers for 15 years.

In an action to recover excess freight charges on shipments of yellow pine, subjected to a 5-cent rate as "lumber," plaintiff claiming a 4-cent rate as on "timber," an instruction that, when a rate is promulgated, and an ambiguous term used, the carrier must be held to have used the term as understood by the public and not in a technical sense, as understood by the carrier, so that, in determining whether the pine should be classified as timber or lumber, the jury should determine from the evidence how the pine would be classified by the public or lumber trade generally, was too narrow, in that it ignored a construction of the terms as evidenced by a practice of the carrier and shippers for 15 years.

2. Evidence ⬥83(1)—Presumption that railroad commission made formal order of approval of published freight tariff.

Where a change of freight tariff was filed with the railroad commission and approved by that body as provided by Code 1907, § 5525, and became effective and was in operation for about a year, in the absence of evidence of a precise and formal order of approval, it must be presumed that the commission made such an order in the premises as the law and their own practice required.

3. Carriers ⬥12(1)—Rate filed and approved by Railroad Commission and filed by carrier "lawful rate" only while unchanged.

There can be but one "lawful rate" in force at a given time, and that rate, by the terms of Code 1907, §§ 5525, 5527, 5553, 5554, 5651, is the rate which has been filed and approved by the Railroad Commission and published by the carrier and behind that rate, so long as it remains unchanged, and so far as its application to specific shipments is concerned, neither shipper nor carrier can go, and courts cannot inquire.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Rate.]

4. Carriers ⬥12(1)—Rate approved and published by railroad commission lawful rate even though unreasonable.

A freight rate which has been filed, approved, and published by the Railroad Commission is the lawful rate, even though unreasonable, and is the only rate which the carrier can charge without violating the statutes and penal laws; and, where a carrier has charged such rates, the shipper is not entitled to recover as for any excess charges, nor for penalties accruing under Code 1907, §§ 5553, 5554.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On Rehearing.

**5. Carriers ☜12(1)—Tariffs approved by Railroad Commission become "lawful rates" binding on carrier till disapproved by Commission.**

Where the carrier filed with the Railroad Commission a tariff covering a designated field, but not in harmony with the original requirements of the Commission, and the Commission approved the tariff as filed, its approval was ipso facto a cancellation of its previous order so far as it was inconsistent with the approved tariff, and by Code 1907, § 5525, the rates so approved became the lawful rate, binding on carrier and shipper alike until discontinued by a valid order of the Commission.

**6. Carriers ☜12(1)—Railroad Commission cannot make freight tariffs retroactive.**

In view of Code 1907, §§ 5669, 5678, providing for changes of freight tariffs being effective only in the future, printed and published freight schedules being by section 5527 lawful rates when approved by the Commission, such schedules cannot be made unlawful for and during the period of their approved operation by any subsequent retroactive finding and order of the Commission.

Appeal from Circuit Court, Jefferson County; Horace C. Wilkinson, Judge.

Action by the T. R. Miller Mill Company against the Louisville & Nashville Railroad Company, to recover alleged excessive freight charges, and also the statutory penalty for a failure on demand to repay such excess. There was judgment for the plaintiff, which on motion was set aside, and the plaintiff appealed. Affirmed.

The alleged excesses arise from a shipment of timber or lumber from Brewton to Mobile, the charge being that it was classified as lumber and subjected to a rate of 5 cents when it should have been classified as timber at a rate of only 4 cents, and for nine separate shipments in car lots of pine doors, sashes, and blinds, which was subjected to a rate of 31 cents under an unlawful tariff filed by the defendant when they should have been carried at a rate of 18 cents as fixed by the lawful tariff then in effect. The timber or lumber was shipped in 1914 and 1915, and the other shipments were made between November 30, 1914, and June 6, 1915.

The first and third counts of the complaint are common counts for money had and received. The second count is for the statutory penalty of $1 for each day's delay on each shipment in making restitution of the alleged excess charges, compliance with the statutes as to time and notice being fully alleged and proven. The timber or lumber shipped by plaintiff consisted of pieces approximately 10 feet long, 9 inches wide, and 5 inches thick, being yellow pine lumber, roughly sawn, and not dressed. Several witnesses who were experienced timber men or dealers testified that such pieces of wood larger than 3x3, regardless of length, are known in the trade as timber, that they are so classified by the Southern Yellow Pine Association, and that they are not properly rated as lumber. The tariff differentiating lumber and timber and logs at greater and lesser rates was first adopted about 1905, prior to which the classification and rating was identical. Since that time the classification here complained of has been uniformly followed by defendant, and shippers have always been informed thereof. On this issue the court instructed the jury as follows:

"When a railroad company promulgates a rate and uses an ambiguous term (and by that I mean a term or word that is susceptible of two or more constructions or interpretations), the company must be held to have used that word in the sense as it was understood by the trade and the public generally, and not in a technical sense, as understood by the railroad company solely; so that in this case, in determining whether or not these shipments should be properly classified as timber or lumber it will become necessary for you to determine, from the evidence in the case, whether or not the public and the lumber trade generally would have classified them as timber or lumber."

The record shows without dispute that prior to September 4, 1914, defendant's tariff, known as Birmingham Local No. 2, was in force; that between 90 and 100 per cent. of its rates were mileage rates, and that therein the rate on pine doors, sashes, and blinds was 18 cents, which was a competitive commodity rate; that on August 13, 1914, after a hearing before the Alabama Railroad Commission, that body ordered that the Louisville & Nashville Railroad Company publish and make effective the attached schedule of rates on the commodities named between all points in Alabama on its own lines, etc., and with the instruction that the rates and attached schedule on the articles named take precedence over rates on the same articles published in any mileage tariff of the Louisville & Nashville Railroad Company wholly within the state of Alabama, etc. Pursuant to this order, on August 13, 1914, defendant filed with the Railroad Commission a new tariff, known as G. F. O. 2229, and duly published the same, to be effective on September 1, 1914. This tariff was construed by defendant as superseding under the order of the Commission of August 13, 1914, all former tariffs made up mainly of mileage rates, and defendant included herein pine doors, sashes, and blinds at the new rate of 31 cents on a mileage basis. Defendant's freight agent, Browder, testified as to this tariff (G. F. O. 2229):

"I do not know whether the Railroad Commission read it or not, but I do know that they had it 10 days, that they got it through the mail and returned a receipt for it which meant that it was approved. They either returned the tariff or forward a receipt for it. If

they return a tariff it is rejected, but if they send a receipt for it they have approved it."

He stated further that said tariff went into effect on September 1, 1914, but the tariff purports on its face to have become effective on September 4, 1914.

On complaint of certain shippers the Railroad Commission cited defendant to a hearing on June 7–9, 1915, to investigate the reasonableness and lawfulness of rule 1 of defendant's tariff G. F. O. 2229 as applying to shipments of lumber and other commodities under a petition to change it so as to make applicable rates in commodity tariffs when lower. On the hearing the Commission found as follows: First, that the tariff of the Louisville & Nashville Railroad Company in effect on its intrastate business at the time of said citation and order were not just and reasonable; second, that the rates on the commodities named in the schedules adopted by it were to be used in lieu of and were to take precedence over rates on the same articles published in any mileage tariff of the Louisville & Nashville Railroad Company of prior date, but were not to supersede the rates published in other mileage tariffs of the said company; fourth, that the rates put into effect by the defendant company by its tariffs G. F. O. 2229 and 2230 under the influence of rule 1 as therein embodied were not in accordance with the letter or spirit or order of the Commission that established theses rates. The defendant company contends that it had no strictly mileage tariff in effect at that time, and that, in omitting any reference to mileage tariffs in its rules to tariffs G. F. O. 2229 and 2230, it conformed to the instructions of this Commission contained in said order of August 13, 1914. Thereupon the Commission ordered as follows:

"That said rule 1 be annulled and disallowed, and that in lieu thereof the following rules are prescribed as being in compliance with the said order of August 13, 1914, namely: The rates named herein must be applied between all points proper in Alabama on the Louisville & Nashville Railroad, and take precedence as such over the rates published in any mileage tariff of the Louisville & Nashville Railroad, but will not supersede the rates carried in other tariffs of this company that were in effect on August 13, 1914, on any of the articles named herein."

Pursuant to this order defendant issued and filed its supplement No. 16 to G. F. O. 2229, effective on September 1, 1915, under which the former commodity rate of 18 cents on pine doors, sashes, and blinds was restored, and the mileage rate of 31 cents was annulled. On this question the trial judge instructed the jury as follows:

That, I say to you, gentlemen, is a question of law, and, as best I can see it, the court rules that tariff 2229, which established or purported to establish the 31-cent rate, did not supersede or set aside the 18-cent rate. In other words, I rule, as a matter of law, that the 18-cent rate on sash and door shipments was in force and effect all the time, and was not superseded by the 31-cent rate.

The jury were also instructed that the penalties claimed could be recovered if the proper claims were duly filed therefor, and defendant failed within 60 days to pay them —facts which were without dispute in the evidence. There was verdict and judgment for $2,244, which, on defendant's motion, was set aside, and new trial entered because of error committed in the rulings of the court.

Brenton K. Fisk, of Birmingham, for appellant.

The court improperly granted a motion for a new trial, since the 31-cent rate was null and void, because its promulgation never had been authorized. Sections 5525, 5651, Code 1907; 87 Ala. 344, 6 South. 122, 5 L. R. A. 100. Even if the publication of the rate had been authorized, and the rate was unreasonable, the plaintiff could still recover the overcharge. Section 13, Const. 1901; 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; 2 Kent's Commentaries, 599, note A.; 61 Ala. 559. Rates must be reasonable, and the Railroad Commission have no right to authorize anything but reasonable rates to be made and collected. 211 Fed. 65, 127 C. C. A. 561; 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; section 5652, Code 1907. The penalty was properly exacted. 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; 16 Ala. App. 199, 76 South. 505; 172 N. C. 363, 90 S. E. 309; 251 U. S. 63, 40 Sup. Ct. 71, 64 L. Ed. 139; 104 Miss. 417, 61 South. 426, L. R. A. 1917B, 926; 166 N. C. 82, 82 S. E. 13; 63 Fla. 122, 58 South. 182; 77 N. H. 222, 90 Atl. 863, Ann. Cas. 1915B, 1195; 27 Cyc. 827.

Tillman, Bradley & Baldwin, of Birmingham, for appellee.

Uniformity of rates and the prevention of discrimination by any means whatsoever is a fundamental principle of all rate regulation and rate legislation. 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; article 6, Code 1907; Acts 1909, p. 210; 198 Ala. 433, 73 South. 650; 196 Ala. 280, 72 South. 120, L. R. A. 1916F, 120; 5 Ala. App. 662, 59 South. 683; (D. C.) 248 Fed. 547. On these authorities, when tariff G. F. O. 2229 was filed, published, and approved, it was prima facie the lawful and reasonable rate, until changed by the Public Service Commission. The finding of the Public Service Commission was not admissible in evidence. 145 Ala. 351, 40 South. 965. The penalty was improperly assessed, so far as the shipment of the sashes, doors, and blinds is concerned. 59 Ala. 510; 75 Ala. 419; 120 Ala. 616, 25

South. 8; 4 Ala. App. 382, 58 South. 994; Acts 1909, p. 210.

SOMERVILLE, J.   [1] 1. We are of the opinion that the instruction given the jury, to the effect that the understanding of the general public and of the lumber trade would properly determine the application of the terms "lumber" and "timber" to forest products when offered for shipment under a freight tariff which discriminates between them as to rates, was too narrow, in that it excluded from consideration the probative force of the practical construction of these terms as evidenced by the practice of the carrier and the assent of shippers for a period of 15 years. We think the jury should have been allowed to consider that practice, which was proven without objection, in determining the meaning of the words "timber" and "lumber" for the purpose of tariff classification.

[2] 2. On the other and more important branch of the case, the decisive question very clearly is whether or not defendant's G. F. O. No. 2229' was effective as a published and lawful tariff during the period of the shipments referred to.

Section 5525 of the Code provides that—

"No change shall be made by any common carrier in the rates, fares and charges  *  *  * which have been filed,. and published by it, or which are in force at the time, until the proposed changes have been submitted to and approved by an order of the Railroad Commission."

The evidence shows without dispute that the tariff in question was filed with the Railroad Commission and approved by that body, and that it was published by the carrier, and became effective in practical and exclusive operation for about a year. It is true that the evidence does not directly disclose the making of any precise and formal order of approval. But it must be presumed, in the absence of evidence to the contrary, that the Commission made such an order in the premises as the law and their own orderly practice required them to make.

We do not understand that appellant denies that this tariff was filed, approved, and published as the law requires. On the contrary, we infer from the record, as well as from the argument, that appellant's real contention is that this tariff was not within the letter or spirit of the order of the Commission pursuant to which it was filed, and that, though originally approved by the Commission, their subsequent finding that it was "not in accordance with the letter or spirit of the order of the Commission," coupled with the Commission's order of June 7–9, 1915, annulling defendant's rule 1 to this tariff (which applied it to commodity rates), and directing the substitution of a rule which excluded pre-existing commodity rates

from its operation, and kept them in force thereafter, effected a complete nullification of the tariff in question, and rendered it unlawful and void ab initio.

A further contention of appellant is that the commission's approval of a tariff or of a particular rate being only prima facie evidence of its reasonableness, if the shipper can show that any rate that he has paid was in fact unreasonable, he can recover the excess in an action at law. And a corollary to that contention, also insisted upon, is that any rate thus shown to have been unreasonable is also ab initio· unlawful within the· meaning and operation of sections 5553 and 5554 of the Code, which penalize the carrier's failure on demand to return to the shipper the excess charges collected from him, "in case of any overcharge on published or lawful rates."

Section 5651 of the Code undertakes to define unlawful rates, viz.:

"All rates, charges, classifications, rules, and regulations adopted or acted upon by any transportation company inconsistent with those prescribed by the commission acting within the scope of its authority, or inconsistent with those prescribed by any statute, shall be unlawful and void."

In pari passu, section 5527 declares that—

"No railroad or common carrier shall charge, demand, collect, or receive a greater or less compensation for the transportation of passengers or property, or for any service in connection therewith, than is specified in such printed schedules and schedules of joint rates, as may at the time be in force, except as provided by law, or the railroad commission, and the rates, fares, and charges named therein *shall be the lawful rates when approved by the railroad commission.*"  ·  (Italics supplied.)

[3] Manifestly there can be but one lawful rate in force at any. given time, and that rate by the very terms of the statutes quoted, is the rate which has been filed with and approved by the Commission, and published by the carrier. Behind that rate, so long as it remains unchanged, and so far as its application to specific shipments is concerned, neither shipper nor carrier can go, and courts cannot inquire. Adams v. C. of G. Ry. Co., 198 Ala. 433, 73 South. 650. ·

It seems to us that this proposition is self-evident and fundamental, and· that it is the foundation of our regulatory system, without which it would fail in its primary purposes, which are to stabilize rates and charges, and to insure equality to shippers in their application. If the rule were otherwise—

"different persons would have different opinions as to what is a fair and reasonable rate; courts and juries, too, would differ, and at one time or place a defendant might be convicted and fined in a large amount for the same act, which, in another place, or at another time, would be held to be no breach of the law. * * * There would be no certainty of being able to

comply with the law." Chicago, etc., R. Co. v. People, 77 Ill. 443, 446.

The principle and policy of rate regulation, and the binding force of the rates which have been filed with and approved by the Commission, are well stated and discussed in Adams v. C. of G. Ry. Co., supra, and in the case of In re Independent Sewer Pipe Co. (D. C.) 248 Fed. 550. See, also, L. & N. R. R. Co. v. McMullen, 5 Ala. App. 667, 59 South. 683, quoting from the opinion in Poor v. C., B. & Q. R. Co., 12 Interst. Com. Com'n R. 418.

In Emerson v. Central of Ga. Ry. Co., 196 Ala. 280, 72 South. 120, L. R. A. 1916F, 120, this court held:

That "it is the duty of the common carrier to inform the consignee of the correct amount due according to the classification and rates on file * * * with * * * the Railroad Commission of the state"; and that "the published classification and rates on file with the Railroad Commission were properly introduced in evidence as showing the classification and rate for the shipment in question." (Italics supplied.)

See, also, Adams v. C. of G. Ry. Co., 198 Ala. 433, 437, 73 South. 650.

What we have already said is necessarily a denial of appellant's claim for the penalties provided for by sections 5553, 5554, of the Code, "in case of any overcharge on published or lawful rates." It is entirely clear that "published rates" in that statute means rates which have been filed, approved, and published as provided by law, and that "lawful rates" means all other rates which have been specifically established by legislative enactment, and which therefore could not be established by filing, approval, and publication. The two phrases refer to different classes of rates—different as to the mode of their establishment—and do not connote all rates under a double alternative.

[4] On the evidence in the record our conclusions are: (1) That the rate of 31 cents charged and collected by defendant on plaintiff's shipments of doors, sashes, and blinds was the rate which had been filed, approved, and published; (2) that it was the lawful rate, whether reasonable or not, and was the only rate which defendant could charge without violating the statutes and penal laws of the state; and (3) that plaintiff is not entitled to recover as for any excess charges on such shipments, nor as for any penalties accruing under sections 5553 and 5554 of the Code.

It results that the trial court properly granted defendant's motion for a new trial, and the judgment so ordering must be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.

207 ALA.—17

On Rehearing.

SOMERVILLE, J. An examination of the argument of counsel for appellee on the application for rehearing discloses two misconceptions of fact, which permeate and invalidate his conclusions.

[5] 1. The record does not show that "on or about the 13th day of August, 1914, the Louisville & Nashville Railroad Company submitted to the Railroad Commission a proposed new schedule of tariffs," as asserted in brief. On the contrary, it shows a citation to the carrier to show cause why the Commission should not establish a, just and equitable scale of freight rates on its line, upon the hearing of which, on the date named, the Commission made an order that the carrier put into effect a schedule of rates thereto attached, with instructions as to their application. To confuse that initial order, which merely propounded a new tariff to the carrier, with the order of approval contemplated by section 5525 of the Code, after the carrier has filed its tariff, is to utterly misconceive the purpose and effect of our system of regulatory laws. Obviously it can make no difference what rates or rules the Commission may have initially proposed to the carrier, or ordered into operation. If thereafter the carrier, whether intending to conform to that order, or otherwise, filed with the Commission a tariff covering the designated field, but not in harmony with the original requirements of the Commission, and the Commission chose to approve that tariff as filed, its order of approval was ipso facto a cancellation of its previous order in so far as it was inconsistent with the approved tariff; and, by force of the statute (Code, § 5525), the rates thus approved, including every rate designated therein, and not excepted from the order of approval, became the lawful rate, binding upon carrier and shipper alike until discontinued and superseded by a valid order of the Commission made under its statutory powers.

We of course understand that a tariff is a schedule of itemized rates, and that the Commission might have approved some of the rates included in G. F. O. No. 2229, and disapproved others. But the record shows no such discrimination. The order of approval is of the tariff as a whole; and that order, to which we have been constrained to give decisive effect, has been entirely ignored throughout the argument of counsel for appellee.

2. Counsel's alternative theory of the case is that, even though the rate here in question was published and went into operation with the approval of the Commission, nevertheless the Commission afterwards found (June 7–9, 1915) that said rate was unreasonable and unlawful, and that the previous rate of 18 cents was reasonable, and remained the only lawful rate.

With all due deference to the claims of counsel, no such findings appear. What the Commission did find, as shown on page 34 of the record, was "that the tariff of the [carrier] in effect on its intrastate business at the time of said citation [viz. August 13, 1914] was not just and reasonable," and "that the rates put into effect by the defendant company by its tariffs G. F. O. 2229 and 2230, under the influence of rule 1 as therein embodied, were not in accord with the letter or spirit of the order of the commission that established those rates." The order thereupon made was:

That "said rule 1 be annulled and disallowed, and that in lieu thereof the following rules are prescribed as being in compliance with the said order of August 13, 1914, viz."

[6] This order does not show upon its face any intention that it should be retroactive in its operation. Its only proper and legitimate effect is to thenceforth apply the tariff in question exclusively to mileage rates, and to exclude its application to other commodity rates in force prior to August 13, 1914.

But, even if it were conceded that the Commission intended its order to be retroactive, it is clear that our statutes give the Commission no such power. Section 5678 provides that; whenever, upon an investigation made under the provisions of chapter 130 of the Code, the Commission shall find any existing rate or rates unreasonable or unjustly discriminatory—

"it shall so determine, and by order fix a reasonable rate, * * * to be imposed, observed, and followed in the future in lieu of that found to be unreasonable, or unjustly discriminatory. * * * (Italics supplied.)

That section seems to relate to proceedings by the Commission ex mero motu, but section 5669, which relates to proceedings on the complaint of a shipper or other individual, also provides for a like order establishing a reasonable rate or rates "which shall be charged, imposed, and followed in the future. * * *" (Italics supplied.)

Section 5527 provides, as already noted, that the printed and published schedules "shall be the lawful rates when approved by the Railroad Commission." Such schedules cannot be made unlawful for and during the period of their approved operation by any subsequent retroactive finding and order of the Commission. Such a practice would be odious to the generally established notions of justice, and would, moreover, be utterly subversive of the policy and utility of any system of rate regulation; for no rate could be relied upon as stable, and neither carrier nor shipper could ever be certain of the basis upon which business was being conducted. For it must be observed that, under such a practice, the Commission would just as well find that a rate approved and imposed by it years before was in fact unreasonably low, and give retroactive operation to the higher rate later found to have been reasonable. Of course no such practice was contemplated, and no such power was vested in the Commission.

Manifestly, whether we consider the reason and policy of the statutes, or their express language, the Commission may not nullify the operation and validity of any tariff or rate which it has previously approved by a statutory order, made under the provisions of sections 5525–5527 of the Code, except as to its future operation.

Counsel draws analogies from the federal system of rate regulation and procedure, and pungently criticizes the original opinion, supra, because it ignores the principles declared in such cases as T. & P. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, Nat. Pole Co. v. C. & N. W. Ry. Co., 211 Fed. 65, 127 C. C. A. 561, and others, cited by counsel in brief.

In reply we wish merely to call the learned counsel's attention to the fact that the federal cases have been decided under a regulatory system quite different from our own, and are therefore wholly inapt. Indeed, it should be unnecessary for us to point out that, under the federal system, the carrier files and publishes its tariffs sua sponte, and they go into operation without any judgment or order of approval by the Interstate Commerce Commission, and are subject to review and condemnation as unreasonable, in which event the law itself provides for restitution to complaining shippers of all charges collected in excess of the rate thereafter found by the Commission to be the reasonable rate, and established by it as such. When the carrier files its rates it is fully understood that they are provisional only, and subject to disallowance, with retroactive effect. In this respect, as will be seen from our previous discussion, the Alabama system is radically different; and counsel's failure to perceive the difference seems to be the source of all of the fallacious reasoning upon which the criticism of our opinion has been grounded.

Counsel likens the initial order of the Commission, dated August 13, 1914, to a corporate charter, under the limitations of which the inconsistent provisions, if any, found in G. F. O. 2229, are null and void. But that analogy is worthless here, for the simple reason that the chartering power—the Commission—is authorized by law to approve such tariff as the carrier may file, notwithstanding any previous order inconsistent therewith; and, when it enters its order of approval, as it did in this case, it thereby gives legal sanction to every rate named in the tariff in question, and renders it conclusively the lawful rate until it is duly set

aside and superseded in some proceeding prescribed by the statute. In the recent case of E. L. Young Heading Co. v. Payne (Miss.) 89 South. 782, the Supreme Court of Mississippi has reached the same conclusion, under a regulatory system substantially like our own, and the opinion contains an interesting and convincing exposition of the subject.

We have given very thorough consideration to this case, and we think that we fully understand the record, the theories of counsel, and the principles of law that are applicable, and, with that understanding, we unhesitatingly reaffirm the correctness of our original conclusions.

Rehearing denied.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.