# Central of Georgia Ry. Co. *v.* Southern Ferro Concrete Co.

## *Assumpsit.*

(Decided May 20, 1915.   68 South. 891.)

1. *Carriers; Rates; Collection.*—Under the Interstate Commerce Act the freight rate on an interstate shipment is the lawful rate existing at the time of the shipment, which rate the carrier is required to collect.

2. *Same; Interstate Shipments; Waiver of Lien.*—Liability for the fixed freight charges is not affected by the carrier's waiver, or loss of its lien on the goods by delivery without collecting the lawful rate and conference ruling No. 314 of the interstate commerce commission properly left it to the court having jurisdiction to declare in each case whether the consignor or consignee is legally liable for the under charges.

3. *Sales; F. O. B.; Passing Title.*—The ownership of goods sold f. o. b. station of consignee did not pass until the goods were delivered.

4. *Carriers; Acceptance by Consignee; Waiver.*—The acceptance and removal of goods by consignee, sold to it f. o. b. its station, with knowledge that the carrier was giving up a lien thereon, for freight under charges, did not create any obligation on its part to pay the freight charges at the request and for the convenience of the consignor beyond the amount stated.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

[Central of Georgia Ry. Co. v. Southern Ferro Concrete Co.]

Action by the Central of Georgia Railway Company against the Southern Ferro Concrete Company to recover for freight undercharges. Judgment for defendant and plaintiff appeals. Affirmed.

London & Fitts, for appellant.

Stokely, Scrivner & Dominick, for appellee

THOMAS, J.—During the years 1906 and 1907 the Southern Ferro Concrete Company bought of Kirkpatrick Sand & Cement Company and Alabama Sand & Supply Company a large quantity of sand, including the sand mentioned in the complaint, at a fixed price delivered at its works on the Birmingham Terminal Station, at Birmingham, Ala. The defendant, appellee here, had no voice in the selection of the points from which the sand was to be shipped, and no interest in the freight rate to be charged for the transportation of the sand from the initial shipping point to Birmingham Terminal Station. The sand was shipped from Bull Creek, in the state of Georgia, by the said company and was brought to appellee by the appellant, Central of Georgia Railway Company, as a common carrier engaged in interstate commerce. The freight that was prepaid by the defendant was at the request and for the convenience of the shipper, and the defendant was under no contract that would render it liable to plaintiff for these freights.

Defendant's plea alleges the above facts; also that, when the claim sued on was made against it for the claimed mistake in the amount of freights, plaintiff was informed of the true contract between the defendant and the owners and shippers of the sand, "who were obligated to pay" the freights, and "who were and are

[Central of Georgia Ry. Co. v. Southern Ferro Concrete Co.]

entirely solvent," and that the defendant did not at any time make any agreement or contract with the plaintiff or any other firm or corporation to pay the freight on said sand, and that there had been no agreement between the plaintiff and the defendant fixing the additional amount of freight due on account of said shipments. The plea was fully proved by the deposition of the witness, Thomas B. Harrison.

Appellant insists that, under the ruling of the Interstate Commerce Commission, appellant was required to collect the undercharges from the consignees. From Conference Rulings of the Interstate Commerce Commission, bulletin No. 6, ruling No. 3, made on November 4, 1907, we quote: ' 3. Collection of Undercharges. —The Commission adheres to its previous ruling that carriers must exhaust their legal remedies to collect undercharge from consignees."

From the same bulletin, conference ruling No. 187, made on June 8, 1909, we take the following: "187. Interpretation of Conference Ruling No. 3.—The case upon which this ruling was made was one where freight charges were collectible from the consignee. To give it general application, the words 'from consignee' are now stricken from the rule, so that it will read: 'Collection of Undercharges.—The Commission adheres to its previous ruling that carriers must exhaust their legal remedies to collect undercharges."

Conference ruling No. 314 (same bulletin) of the Commission reads as follows: "314. Collection of Undercharges.—The law requires the carrier to collect and the party legally responsible to pay the lawfully established rates without deviation therefrom. It follows that it is the duty of carriers to exhaust their legal remedies in order to collect undercharges from the party or

parties legally responsible therefor. It is not for the Commission, however, to determine in any case which party, consignor or consignee, is legally liable for the undercharges that being a question determinable only by a court having jurisdiction and upon the facts of each case (superseding rulings 3 and 187)."

(1) Under the Interstate Commerce Act the freight rate on an interstate shipment is the lawful rate existing at the time of the shipment, and the carrier is required to collect the lawful rate.—*So. Ry. v. Harrison*, 119 Ala. 539, 546, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936; *Texas & Pac. Ry. Co. v. Mugg*, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; *Gulf, C. & S. F. Ry Co. v. Hefley*, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910.

(2) This liability for the fixed freight charges is not affected by the carrier's waiving or losing its lien on the goods by delivery without collecting the lawful rate.—*Tex. & Pac. Ry. Co. v. Mugg, supra; North Ala. R. R. Co. v. Wilson M. Co.*, 9 Ala. 269, 63 South. 34; *So. Ry Co. v. Harrison, supra; Armour Packing Co. v U. S.*, 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681; *L. & N. R. R. Co. v. McMullen*, 5 Ala. App. 662, 59 South. 683.

The suit in this case, for the claimed freight undercharges on interstate shipments of sand, was filed on the 18th day of July, 1911. This was soon after the conference ruling of May 1, 1911, which we have quoted above. Clearly, the last ruling, before shipment, of the Interstate Commerce Commission, must govern the common carrier in its efforts to collect freight undercharges. The rule properly leaves it to the courts having jurisdiction to declare, in each case, whether the consignor or consignee is legally liable for the undercharge.

The appellant relies on an expression in *Central of Georgia Railway Co. v. Birmingham Sand & Brick Co.,* 9 Ala. App. 419, 64 South. 202, declaring that generally the carrier may look either to the consignor or the consignee for such freight charges. This was but the general statement made in 6 Cyc. 500.

(3) The facts of the case now for decision are essentially different from those of the last-cited case, in that it is admitted that the shipments of sand in the case at bar were sold to appellee f. o. b. Birmingham Terminal Station, Birmingham, Ala. The ownership of the sand did not pass until its delivery and the amounts due as freight charges were paid by appellee at the request and for the accommodation of the consignor, and not by virtue of any agreement either with the appellant common carrier or with the consignor.

(4) That the mere acceptance and removal of the goods by the consignee, with the knowledge that the carrier is giving up a lien upon the goods for a stated amount, does not create an obligation on the part of the consignee to pay the charges beyond the amount stated, is declared in Hutchinson on Carriers (3d Ed.) § 897. This statement is supported by *Cent. R. Co. of N. J. v. MacCartney et al.,* 68 N. J. Law, 165 52 Atl. 575, wherein the opinion is written by Mr. Justice Pitney, and many authorities are collected.

Under the undisputed evidence in this case the title did not pass till the sand was delivered to appellee according to the contract of purchase.—*Ala. Nat. Bank v. Parker & Co.,* 146 Ala. 513, 40 South. 987; *Brown v. Adair et al.,* 104 Ala. 652, 16 South. 439; *Ala. Nat. Bank v. Parker & Co.,* 153 Ala. 598, 45 South. 161. Appellee was therefore under neither express nor implied liability for any carriage charges.

The affirmative charge was properly given at the request of the defendant.

The judgment of the city court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.