### CHARLESTON.

COAL & COKE RY. CO. v. BUCKHANNON RIVER COAL & COKE CO.

Submitted November 23, 1915. Decided December 7, 1915.

1. CARRIERS—*Shipment of Goods—Liability for Freight.*
    A consignor who signs a bill of lading on his own account, and not as agent for the consignee, is liable to the carrier for the freight, although title to the goods passed to the consignee on delivery to the carrier. (p. 311).

2. SAME.
    Neither the words, ''Freight collect from consignee,'' written in

the face of a bill of lading, nor a printed condition on the back thereof, stating, "The owner or consignee shall pay the freight," are alone sufficient to relieve the consignor from liability. Such provisions are for the benefit of the carrier and do not constitute a special contract with the consignor. (p. 312).

3. SAME—*Shipment of Goods—Liability for Freight—Release.*

The carrier does not, by waiving its lien and delivering the goods to the consignee before payment of freight, release the consignor from liability. In the absence of a special contract, both consignor and consignee, who has accepted the goods, are liable to the carrier. (p. 312).

4. SAME.

After a sale and delivery to the carrier by the consignor, the owner may reconsign the goods without releasing the consignor, provided his liability is not thereby increased. (p. 313).

5. SAME.

The consignee's being under bond to the terminal carrier to pay the freight, does not affect the consignor's liability on his contract with the initial carrier for the joint freight charges. (p. 313).

Error to Circuit Court, Upshur County.

Action by the Coal & Coke Railway Company against the Buckhannon River Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*J. M. N. Downes,* for plaintiff in error.

*Young & McWhorter,* for defendant in error.

WILLIAMS, JUDGE:

This writ of error is to a judgment recovered against the Buckhannon River Coal & Coke Company by the Coal & Coke Railway Company in an action of assumpsit for the freight on ten carloads of coal.

Defendant is a corporation engaged in mining coal and manufacturing coke. R. J. Humphreys, its general manager, sold the ten carloads of coal to Hite & Rafetto, of Fairmont, West Virginia, brokers, and, at their request, billed it to J. K. Dimmick & Co., Curtis Bay Piers, Maryland. The bills of lading contained the following written words, "Freight Collect from J. K. Dimmick & Co.", and were signed by defendant in the following manner: "B. R. C. & C. Co. Per R. J. H.", and by P. A. Darnall as agent for the railroad company.

Defendant insists that section 8 of the printed conditions on the back of the bill of lading provides for payment of freight by the consignee, and thereby relieves it from liability therefor. That section is as follows: "The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and if required, shall pay the same before delivery. If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped."

Counsel contends that the words "owner" and "consignee", are synonymous terms and refer to the consignee, who is generally also the owner. We do not think it necessary to construe those terms, for, if it be granted that the construction contended for is correct, it was not the purpose of that section to relieve the consignor from liability on his contract. The bill of lading, together with the tariff schedule approved by the Interstate Commerce Commission constitutes the contract, which was executed by defendant on its own account. It does not purport to be made by defendant as agent for the consignee. That section does not constitute the bill of laidng a special contract relieving the shipper who signed it from liability for the freight charges. It was inserted for the carrier's benefit and is intended as notice to shippers of the carrier's legal rights. Regardless of that clause the consignee, if owner, is bound by accepting the goods to do all that clause requires him to do. But the carrier's right to collect from the consignee does not imply a release of the consignor, in the absence of a special contract exonerating him. The carrier may collect from either. Nor did the carrier's waiver of its lien by delivery before payment of the freight, release the consignor, there being no special contract. *Wooster* v. *Tarr*, 8 Allen 270, 85 Am. Dec. 707; 2 Hutch. Carriers, Sec. 810. Both consignor and consignee were bound to plaintiff for the freight, the former on its express contract and the latter on its promise implied by its ownership and acceptance of the coal.

It is next contended that the words, "Freight Collect from J. K. Dimmock & Co.", written in the bills of lading, released defendant from payment of the freight and bound plaintiff

to collect it from the consignee. We do not so understand the law. The authorities uniformly hold that such words inserted in a bill of lading are for the benefit of the carrier, and not for the relief of the shipper or consignor. *Collins & Timberlake* v. *The Union Transportation Co.*, 10 Watts, (Pa.), 384; and *Layng* v. *Stewart,* 1 Watts & Serg., (Pa.), 222. The mere statement, ''collect freight from consignee,'' in a bill of lading signed by the consignor, is not alone sufficient to overcome the presumption that the consignor is bound to pay the freight. *Wooster* v. *Tarr, supra.* Apropo to the question, see also *Union Freight R. R. Co.* v. *Winkley,* 159 Mass. 133, 38 Am. St. Rep. 398. ''Where the consignor of goods on his own account contracts with a common carrier for their transportation, such consignor is *prima facie* liable to pay the charges of transportation, and the mere fact that the charges are left unpaid by the consignor and are to be collected from the consignee at destination, does not discharge the consignor from liability to the carrier.'' *New Jersey Central R. R. Co.* v. *MacCartney,* 68 N. J. L. 165. To the same effect are the following decisions: *Grant et al.* v. *Wood,* 1 Zabriskie (N. J.), 292, 47 Am. Dec. 162; *Portland Flouring Mills Co.* v. *British & Foreign Marine Co.,* 130 Fed. 860; *Union Freight R. R. Co.* v. *Winkley, supra;* and 2 Hutch. Car., Sec. 810. Delivery of the coal to the consignee, although a waiver of its lien for the freight by the carrier, did not exempt the consignor from liability for the freight. Authorities above cited.

Counsel for defendant insist that in no event is it liable for freight on three cars, because they were diverted while in transit. There was no means of weighing the coal, at defendant's mine, and coal loaded there is weighed at Belington, and is then billed out from there. Hite & Rafetto first directed defendant to bill the three cars to them, and later reconsigned them to J. K. Dimmick & Co. in order to make up the lot of ten carloads. Defendant sold the coal to Hite & Rafetto, and admits that title passed to them when the coal was delivered to the railroad company. Hence, being the owners, they had right to reconsign it, so long as they did not increase defendant's liability. *Lewis* v. *Galena & Chicago U. R. R. Co.,* 40 Ill. 281; *Strahorn* v. *Union Stock Yards, etc., Co.,* 43 Ill. 424; *Ryan* v. *Railway Co.,* 90 Minn. 12; and Hutch.

on Car., Sec. 660. They notified defendant by letter, on the 11th of January, that the reconsignment would be made, and it did not object; and the amount of freight was not thereby increased.

Plaintiff. was the initial, and the Baltimore & Ohio Railroad Company the terminal carrier; and the court refused to permit defendant to prove by witness John Y. Hite, of the firm of Hite & Rafetto, that it was the custom of the Baltimore & Ohio Railroad Company to collect the freight from the consignee, and this is assigned as error. Granting that such had been the custom of the Baltimore & Ohio Railroad Company, its failure to observe it in this instance could not affect defendant's liability on its contract with the initial carrier; and, for the same reason, its liability was not affected by the fact that J. K. Dimmick & Co. were under bond with security to the Baltimore & Ohio Railroad Company to pay the freight on all consignments delivered to them. That arrangement was for the convenience of the railroad company, and gave it additional security, but did not release the consignor. It was, therefore, not error to reject testimony relating to the alleged custom of the Baltimore & Ohio Railroad Company to deliver coal and collect the freight from J. K. Dimmick & Co., nor concerning the fact that they were under bond to pay the freight. It is proven that they failed in business and did not pay it; that the Baltimore & Ohio Railroad Company exhausted its remedy on the bond, and still held an unpaid freight account against J. K. Dimmick & Co. amounting to more than $7,000.00, including the freight bill now in suit. It is also proven that plaintiff, being under contract to do so, paid to the Baltimore & Ohio Railroad Company its proportion of the joint freight charges, and is now entitled to the whole thereof, and our conclusion is that it is entitled to recover it from the consignor.

The court gave four instructions asked for by plaintiff and refused to give seven instructions asked for by defendant, but we find no error in the court's rulings in respect thereto. Inasmuch as our conclusion is to affirm the judgment, it is not necessary to discuss them, they being in harmony with this opinion.

The judgment will be affirmed.                    *Affirmed.*