# Emerson *v.* Central of Georgia Ry. Co.

### Action for Freight Undercharge.

(Decided May 18, 1916. 72 South. 120.)

1. **Carriers; Goods; Freight Rate.**—The general rule is that the consignee and carrier are alike charged with notice of the lawful freight rate.

2. **Same.**—The carrier and the shipper are alike bound by the lawful freight rate, notwithstanding mistake, inadvertence, honest agreement or good faith.

3. **Same.**—It is the duty of a common carrier to inform the consignee of the correct freight rate, according to the classification and rates on file respectively with the Interstate Commerce Commission, in the case of interstate shipments, and with the Railroad Commission as to intrastate shipments, and on payment or tender of the amount thus due, to deliver the freight to the consignee, on its arrival.

4. **Same; Undercharges; Action.**—In an action for an undercharge of freight, the published classification and rates on file with the railroad commission are admissible in evidence as showing the classification and rate for such a shipment.

[Emerson v. Central of Georgia Ry. Co.]

5. Same.—Under sections 5521-23, and sections 5527, 5531, 5532 and 5553-5555, and sections 7671 and 7674, and 5550, Code 1907, where it did not appear that a consignee of a horse was the owner, but the evidence tended strongly to show that he was such owner, the railroad suing for undercharges in freight was entitled to an affirmative instruction against such consignee for the difference between the freight paid, and the published rate.

APPEAL from Montgomery City Court.

Heard before Hon. C. P. MCINTYRE.

Action by the Central of Georgia Railway Company against B. F. Emerson, to recover an undercharge in freight rate. Judgment for plaintiff and defendant appeals. Affirmed.

Transferred from Court of Appeals under act creating that court.

HILL, HILL, WHITING & STERN, for appellant. STEINER, CRUM & WEIL, and W. M. BLAKEY, for appellee.

THOMAS, J.—In accordance with the agreement of parties the bill of exceptions on file is hereby established as the bill of exceptions in this cause.

Suit was brought by appellee, Central of Georgia Railway Company, against appellant, as the consignee of a horse shipped over appellee's road from Clayton to Montgomery, Ala., for an undercharge of freight.

One Smith, of Clayton, bought a horse from Emerson under a sales contract guaranteeing it "to be sound." This purchaser at Clayton discovered a defect in the horse's eyes, and subsequently reshipped the animal to Emerson over appellee's road. When this return shipment was made a bill of lading valuing the horse at $300 was issued by appellee and delivered to Smith as consignor, and appellant was named therein as consignee. On its arrivel at the point of destination appellant paid $11.60 freight charges and received the horse. Appellee's agent at Clayton testified that he informed the shipper the true rate on such valuation, that the valuation of $300 was fixed by the shipper's agent, and that at his request the shipment was made collect at Montgomery. The original bill of lading, having been lost before the trial, was not in evidence.

At the time of this shipment and delivery appellee's tariff, a copy of which was on file with the Alabama Railroad Commission as required by law, showed the freight charge on such an animal between said shipping points to be $11.60 on a valua-

[Emerson v. Central of Georgia Ry. Co.]

tion of $100, and to be $34.80 on a valuation of $300. The undercharge error in freight was discovered by appellee about a year later, and demand on appellant for the $23.20 balance was made, and refused.

There was evidence that Smith and Emerson had had negotiations as to the return of the horse under the terms of its sale, but it is not averred nor proven that appellee was informed of the conditions of its reshipment, or who the real owner was, nor that appellee was so informed at the time either of the delivery or of the demand for the payment of the freight undercharge.

The pleas of the defendant were, in short, by consent, the general issue, and any matter that may be specially pleaded.

(1) A general statement of the consignee's prima facie liability is found in 2 Hutchinson, Carriers (3d Ed.) § 807, as follows: "The consignee is presumptively the owner of the goods, and is therefore prima facie liable for the freight, and, if he accepts them, the law implies a promise on his part to pay it; and such acceptance is evidence from which a jury must infer that he is the owner, and therefore bound by an implied contract to pay the freight upon them, unless such inference would be inconsistent with other facts of the case or with proof of ownership in another; and, although he be not named as consignee in the bill of lading, if he be the party for whom the goods were intended, he becomes liable for the freight as soon as they are accepted by him. But, if he is not the owner, he does not become liable from the mere fact of his being consignee, and no contract to pay the freight can be implied unless he accepts the goods; nor even then, where the consignee is known to be merely the agent of the shipper, will the law imply a promise on the part of the agent to pay the freight, though from all the circumstances of the case the jury may find that there was an implied promise.
\*   \*   \*

"But the mere acceptance and removal of the goods by the consignee, with knowledge that the carrier is giving up for his benefit a lien upon the goods for a stated amount, does not create an obligation on the part of the consignee to pay charges beyond the amount stated."

In *Central of Georgia Railway Co. v. Southern Ferro Concrete Co.*, 193 Ala. 108, 68 South. 981, it was held that a carrier's right to collect freight undercharges on interstate shipments was properly left to the court having jurisdiction to de-

clare in each case whether the consignor or the consignee is legally liable for the undercharge. From the pleading and the proof in that case it will be noted that the case is distinguishable from the instant case, in that it was there alleged and proven that "when the claim was made for the undercharge of freight," plaintiff was informed of the true contract between the defendant and the owners and shippers of the sand, "who was obligated to pay" the freights, and "who were and are entirely solvent."

(2) The general rule is that consignor, consignee, and carrier are alike charged with notice of the lawful rate.—*U. Pac. R. Co. v. Am. Smel. & R. Co.,* 202 Fed. 720, 121 C. C. A. 182; *L. & N. R. R. Co. v. Maxwell,* 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; *Penn. R. R. Co. v. Crutchfield,* 55 Pa. Super. Ct. 346; *N. Y., N. H. & H. R. R. v. York Co.,* 215 Mass. 36, 102 N. E. 366; *Cent. R. R. Co. of N. J. v. Mauser,* 241 Pa. 603, 88 Atl. 791, 49 L. R. A. (N. S.) 92; *Penn. R. Co. v. Titus,* 216 N. Y. 17, 109 N. E. 857. The transportation company and the shipper are bound by the lawful rate; no excuse which operates as an evasion of that rate is at law a defense of a proved violation of such rate. Mistake, inadvertence, honest agreement, and good faith are alike unavailable.—*Hooker v. B. & M. R.,* 209 Mass. 598, 95 N. E. 945, Ann. Cas. 1912B, 669; *N. Y., N. H. & H. R. v. I. C. Com.,* 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515; *Armour Pack. Co. v. United States,* 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 681; *N. Y. C. & H. R. R. v. United States,* 212 U. S. 481, 29 Sup. Ct. 304, 53 L. Ed. 613; *L. & N. R. R. Co. v. Mottley,* 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; *Texas & Pac. v. Mugg,* 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011.

The *Titus Case, supra,* relied on by appellee, supports the view adopted in *Central of Georgia Railway Co. v. Southern Ferro Concrete Company, supra.* In *Titus's Case* it is stated that the fact of the true ownership was not "known by the plaintiff prior to said demand." Likewise, in the case of *Central Railroad Co. v. MacCartney,* 68 N. J. Law, 165, 52 Atl. 575, it was pointed out that the carrier had knowledge of the ownership of the goods by the consignor.

(3) It is the duty of the common carrier to inform the consignee of the correct amount due according to the classification and rates on file, respectively, with the Interstate Commerce Commission in the case of interstate shipments and with the

Railroad Commission of the state as to intrastate shipments, and upon payment or tender of the amount due according to such classification and rates to deliver the freight upon its arrival to the consignee.

(4) The published classification and rates on file with the Railroad Commission were properly introduced in evidence as showing the classification and rate for the shipment in question.

(5) The statute is imperative that the schedule of established rates, fares, and charges be filed by the common carrier with the Railroad Commission (Code, §§ 5521-5523, inclusive) ; that the carrier is prohibited from charging any other rates or amounts than those so specified in such schedules and schedules of joint rates as may from time to time be lawfully in force (section 5527), and may not discriminate (sections 5531, 5532), and that recovery may be had for overcharges, penalties, and forfeitures (sections 5553-5555). And the making of overcharges, the receiving of rebates, the granting of discriminations knowingly, in respect to transportation by railroad companies or common carrier, are made misdemeanors (sections 7671, 7674).

It is by section 5550 of the Code provided also that common carriers doing business in this state shall settle their freight charges according to the rate stipulated in the bill of lading, "provided the rate stipulated therein be in conformity with the classifications and rates made and filed with the Interstate Commerce Commission, in case of shipment from without the state, and with those filed with or established or approved by the Railroad Commission of the state, or those established by statute, in case of shipments wholly within the state. * * *"

It is then clear that by section 5550 of the Code, as well as by the decision of *Southern Railway Company v. Harrison*, 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936, the carrier's claim is for the amount fixed by the lawful classification and rates in force at the time the shipment was made.

From the evidence in the case at bar it does not appear that the carrier knew that the consignee was not the owner of the house; but the evidence strongly tends to show him to have been the owner. On this evidence the affirmative charge was properly given for plaintiff.

The case is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.