## CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY v. SAMUEL S. GREENBERG.[1]

### March 22, 1918.

### No. 20,757.

**Action for balance due on interstate shipment — no estoppel against carrier — presumption.**

1. In an action by a railroad company to recover a balance of the legal freight upon an interstate shipment from the consignee, who had accepted the shipment, paid the amount of the freight erroneously understated in the bill of lading, and settled with the consignor upon that basis, the defense of estoppel is not available, for the consignee is conclusively presumed to have had knowledge of the published legal rate.

**Same — implied contract by consignee to pay balance, when.**

2. The consignor or shipper is primarily liable to the carrier for the freight. But if the consignee, the presumed owner, accepts an interstate shipment and pays part of the freight, the law implies an agreement on his part to pay the balance to the carrier, where, as here, the carrier, at the time of the delivery of the shipment, has no knowledge of the arrangement between the consignor and consignee as to the payment of the freight, and the consignor then is and ever since has been insolvent.

Action in the municipal court of St. Paul to recover $30.68, balance due upon a shipment of scrap iron. The facts are stated in the opinion. The case was tried before Boerner, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*F. W. Root* and *Nelson J. Wilcox,* for appellant.

*Moore, Oppenheimer & Peterson,* for respondent.

[1]Reported in 166 N. W. 1073.

HOLT, J.

In November, 1909, defendant, doing business under the name of Greenberg Iron & Metal Company, purchased from J. Applebaum at Cogswell, North Dakota, three carloads of scrap iron to be delivered f. o. b. in St. Paul, Minnesota. The iron was delivered by J. Applebaum to plaintiff, a common carrier of interstate commerce, at Cogswell for shipment to defendant at St. Paul. Plaintiff issued its bill of lading, naming defendant as consignee, but erroneously stating the freight charge to be $166.26, whereas by the duly published schedule rate the amount was $196.94. The defendant accepted the shipment and paid the freight to the amount stated in the bill of lading. Later, the error being discovered, this action was brought to recover from the consignee the balance of the legal rate. The defense is that defendant purchased the iron as above stated, and, upon its arrival at St. Paul, paid the freight named in the bill of lading, relying on its being the correct amount, and also in reliance thereon paid the balance of the purchase price to Applebaum, who ever since has been and now is wholly insolvent. In short, the defense is that because of the carelessness in misstating the freight charges in the bill of lading, whereby defendant was misled into settling with Applebaum upon the basis of its correctness, plaintiff is now estopped from holding defendant for the under charge. There is no allegation or finding to the effect that plaintiff had any knowledge of the sale of the iron or the terms of the sale. The trial court directed judgment in favor of defendant; from the judgment so entered plaintiff appeals.

The facts as above stated are admitted by the pleadings and stipulation of the parties; and the correctness of the conclusion of law in the findings is the only question before us.

It seems impossible to raise the defense of estoppel here. Under authoritative rulings defendant is conclusively presumed to have been cognizant of the proper legal rate, and hence must be held to have known that the payment made was but partial and that plaintiff was bound to collect the balance or be penalized. Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. ed. 683. Therefore an essential factor in estoppel, namely, that the one invoking the doctrine for protection did not know the true situation, is here lacking. In Central of Georgia Ry. Co v. Birmingham S. & B. Co. 9 Ala. App. 419,

64 South. 202, after citing a number of decisions to the effect that the consignee as well as the carrier must be held to have knowledge of the duly published interstate freight rates, is is said that the carrier cannot in any way estop itself from exacting the legal rate. Estoppel cannot avail against the recovery of the legal interstate commerce rates. New York, N. H. & H. R. Co. v. York & Whitney Co. 215 Mass. 36, 102 N. E. 366, and cases therein cited. This is virtually our previous holding in W. C. Goodnow Coal Co. v. Northern Pacific Ry. Co. 136 Minn. 420, 162 N. W. 519. It therefore remains to determine whether plaintiff can maintain this action against defendant had there been no mistake in the bill of lading and had the shipment been delivered to him without any payment of freight and without any express contract in respect to such payment.

Primarily the consignor, Applebaum, who made the contract of shipment, was liable to the carrier for the freight charges. 10 C. J. p. 445. But the owner, or the one having an interest in the property transported, is also obligated to compensate the carrier. 10 C. J. p. 446, and cases there cited. Prima facie the consignee is the owner. 1 Dunnell, Minn. Dig, § 1341, 2 Hutchinson, Cariers (3d ed.) § 807. There is nothing in this case to show that plaintiff knew that Applebaum had sold the iron f. o. b. St. Paul, or that he made the shipment in any other capacity than as agent for the consignee, the presumptive owner. However that may be, when defendant received the shipment, he received it as the actual owner and under the authorities he then became obligated for the whole freight charge. He paid part of it, and the law implies an agreement to pay the balance lawfully due. As said in Pennsylvania R. Co. v. Titus, 216 N. Y. 17, 109 N. E. 857, L.R.A. 1916E, 1127, Ann. Cas. 1917C, 862 (where the consignee was merely a factor for the consignor): "In accepting and receiving the goods he (the consignee) made himself a party to the contract between the consignor and the plaintiff, or entered into an original contract to pay, which took the place of the right of the plaintiff to retain the property until the charges were paid." The shipment there being interstate commerce, the court held that the consignor, consignee and carrier were alike charged with full knowledge of the published rate and its inescapable force, and it was the rate which the defendant agreed to pay in accepting

the goods; therefore the payment of a part obviously did not release the consignee from paying the balance. To the same effect is Union Pac. Ry. Co. v. American S. & R. Co. 202 Fed. 720, 121 C. C. A. 182; Yazoo & M. V. Ry. Co. v. Zemurray, 238 Fed. 789, 151 C. C. A. 639; Central of Georgia Ry. Co. v. Birmingham S. & B. Co. supra; Cornelius v. Central of Georgia Ry. Co. 13 Ala. App. 533, 69 South. 331; New York, N. H. & H. R. Co. v. York & Whitney Co. supra.

Defendant relies upon Central R. Co. v. MacCartney, 68 N. J. Law, 165, 52 Atl. 575, and Central of Georgia Ry. Co. v. Southern F. C. Co. 193 Ala. 108,- 68 South. 981, Ann. Cas. 1916E, 376. In the first case there was an error made by the plaintiff railway company in the lighterage charge, concerning which, as we understand, there was no published legal rate; hence the consignees, the purchasers of the goods carried, were not chargeable in law with knowledge of the correct amount, and payment of the named freight charges and settlement with the consignor, a foreign corporation, for the purchase price, after deducting such charges, in ignorance of the error, placed them in a position to invoke the estoppel which the decision sustained. In that case it is also stated that the carrier had actual notice that the ownership of the shipment was in the consignor until delivery to the consignee. The decision also recognizes the rule that acceptance of the shipment by the consignee without payment of the full freight charge, implies an agreement on his part to pay any balance remaining. Such implied agreement, however, does not discharge the shipper from his obligation to the carrier, the two contracts being independent but not inconsistent.

In Emerson v. Central of Georgia Ry. Co. 196 Ala. 280, 72 South. 120, L.R.A. 1916F, 120, the same justice who wrote the decision in Central of Georgia Ry. Co. v. Southern F. C. Co. supra, points to certain features that distinguish the latter case from the one at bar, namely, that, when the claim there was made for undercharge of freight, the carrier was informed of the true contract between the consignee and consignors under which the latter, who were entirely solvent, were obligated to pay the freight. The very opposite of which is the situation before us.

The case of Coal & C. Ry. Co. v. Buckhannon R. C. & C. Co. 77 W. Va. 309, 87 S. E. 376, L.R.A. 1917A, 663, cited by defendant to the effect

that a consignor is bound to the carrier for the freight, although the title to the goods passed to the consignee upon delivery to the carrier, also supports plaintiff's right of recovery here, for part of the syllabus is: "In the absence of a special contract, both consignor and consignee, who has accepted the goods, are liable to the carrier." In New York Cent. & H. Ry. Co. v. Butler (Sup.) 145 N. Y. Supp. 918, the defendant was not consignee, but was named as a person to be notified of the arrival of the shipment at destination, and the case does not seem to be in point here.

In our opinion the conclusion of law should be amended so as to direct judgment in favor of plaintiff.

The judgment is reversed and the case remanded for the final disposition indicated.