MONTPELIER & WELLS RIVER RAILROAD *v.* CHARLES BIANCHI & SONS.

February Term, 1921.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed May 3, 1921.

*Carriers—Interstate Commerce Act—Lawful Freight Rate Must Be Collected and Paid—Party Liable Presumed to Know Lawful Rate—Consignor Primarily Liable for Freight Charges—Bill of Lading not Contract to Collect Charges from Consignee—Passing of Title Held not to Affect Liability for Freight Charges.*

1.   The Interstate Commerce Act requires the carrier to collect, and the party legally responsible therefor to pay, the lawful rate

existing at the time of shipment of freight, without deviation through mistake, ignorance, or otherwise.

2. The party liable for the freight charges on an interstate shipment is conclusively presumed to know the lawful rate.

3. As a general rule, the consignor with whom the contract of shipment is made is primarily liable for the freight charges, whether he is the owner of the goods or not, and whether or not some one else may be liable for the charges either as owner or consignee.

4. A provision in a bill of lading that the owner or consignee shall pay the freight and all other charges, and, if required, pay them before delivery, does not constitute a contract by the carrier to collect the freight charges from the owner or consignee, so as to exempt the consignor from liability, and the consignor is liable where the carrier delivered the goods to the consignee without collecting the full charges.

5. In such case, the fact that the title to the goods shipped vested in the consignee when they were loaded on the cars does not affect the liability of the consignor for the freight charges; it not appearing that the carrier knew that fact at the time of shipment.

ACTION OF CONTRACT to recover the balance of certain freight charges. Tried by Montpelier City Court, *Erwin M. Harvey,* Judge, on an agreed statement of facts. Judgment for the defendants. The plaintiff excepted. The opinion states the case.

*H. C. Shurtleff* for the plaintiff.

*Alland G. Fay* for the defendants.

SLACK, J. This case was heard below on an agreed statement of facts, judgment was for the defendants, and the case is here on plaintiff's exception to the judgment.

The material facts in the case are these: The defendants, who are granite manufacturers located in the city of Barre, sometime prior to March 12, 1915, entered into a contract with Matthew & Mather, of Norfolk, Nebraska, to manufacture for the latter certain granite monuments to be delivered f. o. b. City of Barre. The defendants delivered these monuments to the plaintiff, loaded on cars furnished by it, at the City of Barre,

March 12, 1915, and received from the plaintiff a receipt or bill of lading in the usual form which in part is as follows: "RE-CEIVED, subject to the classifications and tariffs in effect on the day of the issue of the Original Bill of Lading, at Barre, Vt., March 12, 1915, from Bianchi & Sons the property described below * * * that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on the back hereof) and which are agreed to by the shipper and accepted for himself and his assigns. * * * Consigned to Matthew & Mather. Destination Norfolk, State of Neb." and was signed, "Chas. Bianchi & Sons, Shipper. J. N. Gall, Agent." It also contained the provision: "This Bill of Lading is to be signed by the shipper and the agent of the carrier issuing same," and on the back thereof was the following: "The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery."

The plaintiff forwarded the monuments over its own and connecting lines of railroad to Norfolk, Nebraska, the delivering road being the Chicago & Northwestern. Upon the arrival of the shipment at Norfolk, the agent of the Chicago & Northwestern notified Matthew & Mather, and presented them a freight bill for $370.00. Matthew & Mather claimed that the correct charge was $344.49, whereupon the agent made out a receipt for the shipment at the rate claimed by Matthew & Mather, and they paid him that amount and signed the receipt, and he delivered the monuments to them. Later, it was discovered that the rates as shown by the tariff on file with the Interstate Commerce Commission and in legal force, at the time, was $367.00; whereupon the Chicago & Northwestern tried to collect the unpaid balance from Matthew & Mather, but, failing to do so, on December 7, 1916, demanded payment of the defendants, and, the same being refused, this suit was brought. The defendants had no knowledge that the freight charges had not been paid until they received notice from the Chicago & Northwestern, at which time one of the consignees had deceased, leaving no estate, and the other was insolvent.

The only question here is whether on these facts the plaintiff is entitled to recover.

[1, 2] The Interstate Commerce Act requires the carrier to collect, and the party legally responsible therefor to pay, the law-

ful rate 'existing at the time of shipment, without deviation through mistake, ignorance or otherwise (*Louis. & Nash. R. R.* v. *Maxwell*, 237 U. S. 94, 59·L. ed. 853, 35 Sup. Ct. 494, L. R. A. 1915 E, 665; *Tex. & Pac. Ry. Co.* v. *Mugg*, 202 U. S. 242, 50 L. ed. 1011, 26 Sup. Ct. 628; *Gulf, C. & S. F. Ry. Co.* v. *Hefley*, 158 U. S. 98, 39 L. ed. 910, 15 Sup. Ct. 802), and the party liable for such charges is conclusively presumed to know the lawful rate. *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 653, 57 L. ed. 683, 33 Sup. Ct. 391. .

[3] The general rule is that the consignor with whom the contract of shipment is made is primarily liable for the freight charges, whether he is the owner of the goods or not. *Portland Flouring Mills* v. *British, etc., Ins. Co.*, 130 Fed. 860, 65 C. C. A. 344; *Cincinnati, N. O. & T. P. R. Co.* v. *Vredenburgh Saw Mill Co.*, 13 Ala. App. 442, 69 So. 228; *Chicago, M. & St. P. R. Co.* v. *Greenberg*, 139 Minn. 431, 166 N. W. 1073, L. R. A. 1918 D, 160, Ann. Cas. 1918 E, 456; *Baltimore & O. S. W. Ry. Co.* v. *New Albany Box & Basket Co.*, 48 Ind. App. 647, 94 N. E. 906, 96 N. E. 28; *Chicago R. I. & G. Ry. Co.* v. *Floyd* (Tex. Civ. App.) 161 S. W. 954; 10 C. J. 445, and cases there collected. This is so because he makes the bailment of the goods to be carried, and, as bailor, is liable for the carrying charges. *Wooster* v. *Tarr*, 8 Allen (Mass.) 270, 85 A. D. 707. And this liability is not effected by the mere fact that some one else may be liable for such charges, either as owner or consignee of the goods shipped. See cases cited above.

[4] These propositions are not seriously questioned by the defendants, but they contend that they do not apply to the case at bar, because they say that the provision in the bill of lading that, ''The owner or consignee shall pay the freight and all other lawful charges,'' constitutes a contract whereby the plaintiff agreed to collect the freight charges from the owner or consignee, and that the effect of such contract is to exempt the defendants from those charges. Although a new question in this State, courts in other jurisdictions have had occasion to construe like provisions in bills of lading. The earliest case that we have found where such a provision was before the court is *Coal & Coke Ry. Co.* v. *Buckhannon River Coal & Coke Co.*, 77 W. Va. 309, 67· S. E. 376, L. R. A. 1917 A, 663. The material facts in that case are quite like the facts in this case. That was an action by the carrier against the consignor to recover the freight on ten cars of

coal, which the consignor had sold to Hite & Rafetto, the title thereto vesting in the latter when the coal was loaded on the cars. The bill of lading was signed by the consignor and by the agent of the carrier, and contained a provision precisely like the one under consideration. We quote what the court said concerning that provision: "It was not the purpose of that section to relieve the consignor from liability on his contract. The bill of lading, together with the tariff schedule approved by the Interstate Commerce Commission, constitutes the contract, which was executed by the defendant on its own account. It does not purport to be made by the defendant as agent for the consignee. That section does not constitute the bill of lading a special contract relieving the shipper who signed it from liability for the freight charges. It was inserted for the carrier's benefit and is intended as notice to shippers of the carrier's legal rights. Regardless of that clause, the consignee, if owner, is bound by accepting the goods to do all that clause requires him to do. But the carrier's right to collect from the consignee does not imply a release of the consignor, in the absence of a special contract exonerating him. The carrier may collect from either. Nor did the carrier's waiver of its lien by delivery before payment of the freight release the consignor, there being no special contract. *Wooster* v. *Tarr*, 8 Allen [Mass.] 270, 85 A. D. 707; 2 Hutch. Carriers, § 810. Both consignor and consignee were bound to plaintiff for the freight, the former on its express contract, and the latter on its promise implied by its ownership and acceptance of the coal."

That case was followed in *Great Northern Ry. Co.* v. *Hocking Valley Fire Clay Co.*, 166 Wis. 469, 166 N. W. 41, where the consignor was held liable for freight charges, although the bill of lading contained a provision like the one before us. There, as here, the contention was that this provision was an express agreement by which the owner or consignee was made liable for the freight charges, the effect of which was to release the consignor from liability, but the court said: "The benefits accruing to the carrier under the terms of this condition of the bill of lading do not embrace an agreement releasing the consignor. The condition confers on the carrier the right to collect the freight from the owner or consignee without changing the liability of the consignor."

The court had a like provision for consideration in *Chicago & Northwestern Ry. Co.* v. *Queenan,* 102 Neb. 397, 167 N. W. 410, L. R. A. 1918 D, 946, and held the consignors liable.

In *Duncan* v. *United Steel Co.* (D. C.) 244 Fed. 258, an action against a consignee, heard on demurrer to the complaint, the West Virginia case was cited with approval. After reciting the material allegations in the complaint, among which was an allegation that the bill of lading contained a provision that "The owner or consignee shall pay the freight and all other lawful charges," the court said: "It is settled law that the shipper or consignor is, on the facts above stated, under a contract obligation to pay the freight charges, and that this obligation may be enforced regardless of any promise contained in the bill of lading requiring the consignee to pay or regardless of any new obligation assumed by the consignee to pay the same not amounting to actual payment."

We have not found a case, and we doubt if one can be found, where the provision relied upon by the defendants has been given the construction which they contend for.

The plaintiff contends that no agreement can exempt the shipper from liability, and cites in support of this proposition *Georgia Ry. Co.* v. *Creety,* 5 Ga. App. 424, 63 S. E. 528, and *B. & O. S. W. R. Co.* v. *New Albany Box & Basket Co., supra.* See, also, *Cincinnati, N. O. & T. P. R. Co.* v. *Vredenburgh Saw Mill Co., supra; Jelks* v. *Philadelphia & R. Co.,* 14 Ga. App. 96, 80 S. E. 216, and *Boise Commercial Club* v. *Adams Express Co.,* 17 Interst. Com. Com'n R., 115, 121. In the latter case it is said: "Since the law imposes upon a carrier the absolute duty to collect freight charges, it may proceed against either the consignee or the consignor; and, to relieve itself from the penalty imposed by law for failure to exact the charges, if it fails to collect from the consignee it must proceed against the consignor. This is required as a matter of public policy. It is not only the right, but the duty, of the carrier to thus collect the charges."

[5] But we are not concerned with this question because no attempt to exempt the defendants from liability is shown. The provision in question does not, as we have seen, have that effect, but is rather for the benefit and security of the carrier.

The fact that the title to the monuments vested in the consignees when the monuments were loaded on the cars has no force,

it not appearing that the plaintiff knew that fact at the time of shipment.

*Judgment reversed, and judgment for the plaintiff for $22.51 and costs.*