TENNESSEE CENTRAL RAILWAY COMPANY v. W. R. TATE
COMPANY.

Middle Section.   April 2, 1927.

Petition for Certiorari denied by Supreme Court, December 3, 1927.

1. **Carriers.   Shippers are presumed to know established rates.**
    It is well settled that shippers are presumed to know the rates es-
tablished by the Interstate Commerce Commission, and are bound by them,
and cannot by lack of such knowledge be affected in their liability for the
lawful rate.

2. **Carriers.   Carriers must collect correct freight rate.**
    Where an erroneous freight rate is quoted and collected the carrier must
collect the correct freight, even though that results in injury or great hard-
ship to the shipper, or to the consumer, and the carrier cannot by its conduct
estop itself to sue for and recover the lawful rate.

3. **Carriers.   Carrier must collect the freight rate fixed by the Interstate
    Commerce Commission.**
    In an action by a carrier to recover for the shipment of freight where
the defense was that the carrier had misquoted the rate to the shipper, and
the shipper relying thereon had surrendered a certain freight bill which de-
prived him of credit in the amount sued for, **held** that this could not be con-
sidered a defense to the action for the shipper is presumed to know the rate
and any act of the railroad company can not be considered as an estoppel to
keep it from collecting the rate fixed by the Interstate Commerce Commission.

Appeal in Error from Circuit Court, Davidson County; Hon. E.
F. Langford, Judge.
    Reversed.
    Roberts & Roberts, of Nashville, for plaintiff in error.
    Cornelius & Wade, William N. McKinney and W. K. Cook, all of
Nashville, for defendants in error.

DeWITT, J.   The Tennessee Central Railway Company has ap-
pealed in error from the judgment of the circuit court dismissing its
suit, originally instituted before a Justice of the Peace, to collect the
sum of $102.30 from the defendants in error, claimed as an under-
charge on a carload of bulk corn shipped from Nashville, Tennessee
to Washington, N. C.   The defendants in error filed a plea of re-
coupment to the effect, that acting upon the advice of an authorized
agent of the Railway Company that said shipment could be made
at a reshipment rate, they surrendered to the Railway Company a
receipted freight bill which operated as a credit to them for the
same sum of $102.30.
    In December, 1924, the defendants in error had a carload of bulk
corn that had been shipped into Nashville from a point subject to a

rate, known as the Ohio River rate when reshipped to a point to which a reshipping rate would apply. They desired to reship this corn to a consignee in Washington, N. C., which was not a point to which such a reshipping rate would apply. They inquired of the agent of the Railway Company if it could be so shipped on the basis of the reshipping rate, and were erroneously answered in the affirmative. The rate from the original point of shipment to Washington, N. C., was 36½ cents per 100 pounds. If Washington, N. C. had been a point to which corn could be reshipped at Nashville, on the basis of the through rate, the total charge would have been 36½ cents per 100 pounds. The rate paid into Nashville from the initial point was 18½ cents per 100 pounds, and the local rate from Nashville to Washington, N. C. was 33½ cents per 100 pounds. The Railway Company reshipped the carload of corn to Washington, N. C., and the balance of 18 cents per 100 pounds at the reshipment, or through rate was collected from the consignee at Washington, N. C. In making the reshipment, the defendants in error surrendered to the Railway Company the receipted freight bill covering the shipment to Nashville, at 18½ cents per 100 pounds. Thus, by inadvertence, the defendants in error were allowed the benefit of a reshipment rate of 18 cents instead of the local rate of 33½ cents. They surrendered to the Railway Company a credit which they could have used in satisfaction pro tanto of charges on any other reshipments which they might desire to make to points to which the through rate would apply. When a shipment of grain originates above the Ohio River, the Railway Company offers a through rate from the place where the shipment crossed the Ohio River to certain points in the southeast, and allows an intermediate shipper the right to pay the freight, receive a receipted freight bill for shipment to Nashville, and reship said grain to points in the southeast by surrendering said receipted freight bill for its face value. This was done in this transaction. Such a receipted freight bill, under proper circumstances is worth to the intermediate shipper its face value. It is insisted by defendants in error that through the misrepresentation this receipted freight bill was cancelled or destroyed to the extent of its face value, for which defendants in error could maintain an action in damages, or could set up by plea of recoupment against the undercharge sought to be recovered by the Railway Company. This insistence was sustained by the trial judge.

As aforesaid, the published rate on the shipment of corn from Nashville to Washington, N. C. was 33½ cents per 100 pounds; and the through rate from the original point of shipment was 36½ cents per 100 pounds. Thus the amount sued for is the difference per 100 pounds between the 18 cents paid and the 33½ cents, or 15½ cents per 100 pounds—that is, $102.30.

The payment at the rate of 18½ cents per 100 pounds was made in order to bring the corn to Nashville. Washington, N. C. was a restricted point within the rules, for shipment over the line of plaintiff in error, as approved by the Interstate Commerce Commission; so that the shippers were not entitled to a total rate of 36½ cents per 100 pounds for bringing the corn to Nashville and reshipping it to Washington, N. C. The total lawful rate for these two shipments was 52 cents, that is, 18½ cents for bringing the corn to Nashville, and 33½ cents for shipping it from Nashville to Washington, N. C. Eighteen and one-half cents per 100 pounds was paid by the defendants in error and they took therefor the receipted freight bill in question. Eighteen cents per 100 pounds was paid by the consignee at Washington, N. C. The receipted freight bill could not lawfully be used for this reshipment, because the amount still required to ship the corn to Washington, N. C., was as much as the amount of this receipted bill. The insistence of the defendants in error is, not that any mistake was made in quoting the rates, but that the mistake was made in completing the billing to a point to which the Railway Company could not handle the corn on a reshipping basis; that this misled the defendants in error into making the reshipment over the lines of the Tennessee Central Railway Company when they could have made the re-shipment over the lines of the N. C. & St. Louis Railway, and connecting carriers, at the reshipment rate of 18 cents, instead of 33½ cents from Nashville to Washington, N. C.; and that thereby they were deprived of the credit of at least $102.30 which they could have used on other shipments over the Tennessee Central Railway Company. In other words, they insist that they have lost, by the misleading conduct of the agent of the Railway Company, a credit which otherwise they would have used. It is evident, however, that a mistake was made in quoting the rates.

It is well settled that shippers are presumed to know the rates established by the Interstate Commerce Commission, are bound by them, and cannot by lack of such knowledge be affected in their liability for the lawful rate. Hop Co. v. Southern Pacific Co. (Ore.). 143 Pac. Rep. 931; Railway Co. v. Greenberg (Minn.), 166 N. W. 1073; Railway Co. v. Southern Coal & Coke Co., 147 Tenn., 433, 248 S. W., 297; Stave Co. v. Hattendorf, 7 Tenn. C. C. A., 415; Railroad Co. v. Maxwell, 237 U. S. 94; 37 L. Ed., 853.

The rule is that where an erroneous interstate rate is quoted and collected, the carrier must collect the correct freight, even though that results in injury or great hardship to the shipper, or to the consumer, and the carrier cannot by its conduct estop itself to sue for and recover the lawful rate. Railway Co. v. Southern Coal & Coke Co., supra. Therefore the shipper cannot be heard to say that

he relied upon a misrepresentation of an agent of the carrier in quoting rates.

To sustain the insistence of defendants in error would be to ignore the rule that the shipper is charged with exactly the same knowledge as the carrier, as to tariff rates, and it does not matter whether the shipment moved by one route or by another, as the law imposes upon the shipper the duty of paying and upon the carrier the duty of collecting, the published rate for the route over which the shipment actually moved. Railway Co. v. Curtis (Ga.), 82 S. E., 318. The presumption of knowledge of the scheduled rates on the part of the shipper, as well as the carrier, is conclusive. Roberts on Federal Liability of Carriers, sec. 261, and cases there cited; Southern Railway v. Prescott, 240 U. S., 632; 60 L. Ed., 836; L. & N. R. R. Co. v. Maxwell, 237 U. S., 94, 57 L. Ed., 853, L. R. A., 1915E, 665; T. & P. R. R. Co. v. Mugg, 202 U. S., 242, 50 L. Ed., 1011. As the contract was for shipment over the line of the plaintiff in error, the defendants in error are liable for the published lawful rate therefor, and they must be deemed as assenting thereto. To sustain the plea of recoupment and allow a claim for damages because by the misrepresentation the shipper was prevented from shipping by another route, would be to impair, or destroy, the presumption and to violate the rule requiring strict compliance with the Interstate Commerce Act (U. S. Comp.) Stat., sec. 8569-7) and the controlling orders of the Interstate Commerce Commission made thereunder. We cannot relieve the shippers from a situation of which they are conclusively presumed to have had full knowledge.

The judgment of the circuit court is reversed, and judgment will be entered in favor of the Railway Company against the defendants in error for $102.30 and all costs of this cause.

Crownover, J., and Henderson, Special J., concur.