## HENRY A. SCANDRETT AND OTHERS, TRUSTEES OF CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, v. R. L. HIGGINS.[1]

January 24, 1941.

No. 32,639.

[1]Reported in 296 N. W. 26.

304

*S. R. Moore,* for appellant.

*F. W. Root, C. O. Newcomb,* and *A. C. Erdall,* for respondents.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from a judgment. As there are three railway companies involved in the transportation of the carload of potatoes out of which the present difficulty arose, we shall refer to plaintiff railway, for which its trustees appear, as the "Milwaukee," to the Minneapolis, Northfield & Southern Railway Company as the "Northfield," and to the Great Northern Railway Company as the "Great Northern."

The facts found by the court may be summarized as follows:

On October 3 or 4, 1934, defendant loaded a carload of potatoes at Northwood, North Dakota, a station served only by the Great Northern, consigned to Chicago, but "with instructions to hold on the tracks" of the Northfield at Minneapolis for further orders. In conformity therewith, the car was so delivered on October 5. Defendant was both "consignor and consignee of said shipment." The Northfield thereupon issued "an exchange or new order bill of lading" directing the shipment to Aberdeen, South Dakota. This new bill of lading "showed that the potatoes originated in Northwood," and by it defendant again was designated as consignor and consignee. The instructions provided, however, that upon arrival at Aberdeen the Milwaukee should "notify the Booker Fruit Company." The bill contained a printed notation to the effect that if the shipment was "to be delivered to the consignee without recourse on the consignor, the consignor" should sign a statement reading: "The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges." This defendant signed. Upon arrival at Aberdeen there was refusal to pay any greater amount than the published tariff between Northwood and Aberdeen, the rate between these points over the Great Northern being 24 cents per 100 pounds. In that sum only was payment made. The Milwaukee transported the car from Minneapolis to Aberdeen.

The question is to determine the rate applicable to this shipment. The Milwaukee claims, and this is the foundation for its suit, that the lawful tariff rate between Northwood and Minneapolis is 29 cents, that between Minneapolis and Aberdeen 28 cents, per 100 pounds, amounting in all to $205.20; hence that after deducting the $86.40 paid at Aberdeen, the amount based on the 24-cent rate applicable to a shipment from Northwood to Aberdeen, there is due a balance of $118.80. In that amount with interest it sought and obtained recovery.

"The short route by rail from Northwood to Aberdeen is 256 miles over the line of the Great Northern" and "is the natural and customary route in the transportation of shipments" between the mentioned points. If there is to be a haul over another railroad, "the shortest joint route * * * is 294 miles and involves a movement from Northwood to Wahpeton, North Dakota, over the line" of the Great Northern, thence from Wahpeton to Aberdeen, South Dakota, over the Milwaukee by way of Ortonville, Minnesota. The actual mileage covered by this shipment was 322 miles from Northwood to Minneapolis, and 286 miles from Minneapolis to Aberdeen, a total of 608 miles. Thus "the route over which the shipment actually moved was approximately 137 per cent more circuitous than the shortest" available route. The court was of opinion that since by the published tariffs approved by the interstate commerce commission the short route charge of 24 cents was applicable only between "stations located on the Great Northern," and "will apply only via" that line (citing Western Trunk Line Tariff No. 297, I. C. C. A-2442), therefore the rate of 24 cents was inapplicable to the case, and that the routes selected by the owner of the shipment and the tariffs applicable thereto provided the true basis upon which to compute the total rate to be paid.

Defendant challenges the court's findings as not sustained by the evidence. He asserts that the 24-cent rate applies, since the rate between the point of origin and final destination is thus limited; that the circuitous route chosen by defendant "does not

306

change the situation"; and that, in any event, the "without recourse" provision relieves him from liability.

■ A careful review of the evidence leaves no doubt that the facts found by the court and hereinbefore related are substantially supported.

■ As we have seen, the shipment traveled over a very much longer route than that provided by the initial carrier, the only line available at point of origin. Over its line the shipment would have been at the 24-cent rate. That much is clear. Were this case one of private employment no one would contend that the service here rendered would be adequately compensated upon a 24-cent basis. To illustrate: Assume that this case involved compensation for work based upon hours of labor in its performance, is it conceivable that an employe would be justly paid if by working 600 hours he received only the standard pay for 256 hours, working conditions being the same? Additional illustrations could well be made *ad infinitum*. Whether labor or service is performed or provided by an individual or by a public utility, the basis upon which both must rest is that there be reasonably adequate compensation for that which is furnished. Enterprise as well as labor must, to exist, receive its *quid pro quo*. So, unless there is compelling law or rule having the force of law to the contrary, one would naturally be inclined to view with grave doubt the soundness of defendant's theory in this respect.

There is no question about the 29-cent rate between Northwood and Minneapolis, and the 28-cent rate from there to Aberdeen. It is equally clear that the chosen route was 137 per cent greater than over "the natural and customary route" between Northwood and Aberdeen. As such it was unreasonably circuitous. If defendant's theory were adopted the rate of 24 cents could apply even though the shipment went through to Chicago and was then diverted back to Aberdeen, a distance of some 1,400 miles. Such is the import of his expert's testimony. Obviously such a theory leads to absurdity and injustice. In addition, it is in direct violation of the long-and-short-haul provision under the Interstate

Commerce Act. 49 USCA, § 4. This is made apparent here in view of the holding in G. N. Ry. Co. v. Delmar Co. 283 U. S. 686, 690, 51 S. Ct. 579, 581, 75 L. ed. 1349, 1353, where the court said:

"The railway can transport the shipments over the shorter and customary route without violating § 4; but if the tariff is construed to require it to take them over the longer route it must violate that section and incur the resulting penalties. In this situation we think the tariff should be construed as applying only to the shorter route, and not as giving the shipper the option between the two routes at the through rate. This conclusion is in accord with the principle that where two constructions of a written contract are possible, preference will be given to that which does not result in violation of law."

■ Defendant was the owner of the potatoes when the car was loaded at Northwood, and such he remained until delivered f. o. b. to the purchaser at Aberdeen. In that situation, he was responsible for the full freight charges accruing upon the shipment. Interstate Commerce Act, 49 USCA, § 2; Elkins Act, 49 USCA, § 41(1); Louisville & Nashville R. Co. v. Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. ed. 297, 34 L.R.A.(N.S.) 671. This court so held in C. M. & St. P. Ry. Co. v. Greenberg, 139 Minn. 428, 430, 431, 166 N. W. 1073, 1074, L. R. A. 1918D, 158, Ann. Cas. 1918E, 456. Here, as in that case, "defendant received the shipment, he received it as the actual owner and * * * he then became obligated for the whole freight charge." Only a part of it was paid; hence "the law implies an agreement to pay the balance lawfully due." This shipment being one in interstate commerce, all parties involved "were alike charged with full knowledge of the published rate and its inescapable force, and it was the rate which the defendant agreed to pay in accepting the goods; therefore the payment of a part obviously did not release the consignee from paying the balance." The following cases are helpful: Louisville & Nashville R. Co. v. Maxwell, 237 U. S. 94, 35 S. Ct. 494, 495, 59 L. ed. 853, 855, L. R. A. 1915E, 665; Louisville & Nashville R. Co.

v. Central I. & C. Co. 265 U. S. 59, 44 S. Ct. 441, 442, 68 L. ed. 900, 902; G. N. Ry. Co. v. Hyder (D. C.) 279 F. 783, 786; Wells Fargo & Co. v. Cuneo (D. C.) 241 F. 727, 729.

Judgment affirmed.